## RUMSEY and others *v.* BUCK.[1]

### (*Circuit Court, E. D. Missouri.* May 30, 1884.)

1. PATENTS—ASSIGNORS ESTOPPED FROM DISPUTING VALIDITY.

A., B., and C., who were tenants in common of an interest in a patent on drilling clamps, obtained another patent for an improvement in such clamps. Thereafter C. transferred his interest in the former patent to A. and B., and they transferred their interest in the latter patent to him, and his heirs and assigns, to hold and enjoy the benefit thereof during the period for which the letters had been granted. And they agreed with C. upon the price which each of the parties was to charge for the clamps to be manufactured under their respective patents. In a suit subsequently brought by A., B., and another to enjoin the manufacture and sale of clamps under C.'s patent, *held,* that A. and B. are estopped from claiming that their patent is infringed by clamps manufactured under C.'s patent.

2. SAME—IMPROVEMENT IN CLAMPS FOR HOLDING RATCHET-DRILLS FOR DRILLING RAILROAD RAILS.

Letters patent granted Louis Beland, January 16, 1877, No. 186,225, for an improvement in clamps for holding ratchet-drills for drilling railroad rails, *held,* not infringed by clamps manufactured under letters patent granted Flavius J. Underwood, Andrew Warren, and Perrin G. March, July 9, 1878, No. 205,927, for an improvement in railroad track-drills.

In Equity. Suit for the infringement of a patent for an improvement in drilling clamps for drilling railroad rails.

*Parkinson & Parkinson,* for complainants.

*George M. Stewart* and *Britton A. Hill,* for defendants.

TREAT, J., (*orally.*) It appears from the bill that complainants Warren and March derive title to the patent, which it is alleged has been infringed, through Flavius J. Underwood, and the complainant Rumsey derives his title direct from the patentee, Beland. From the averments of the bill and answer, which were supported by the evidence, it appears that in September, 1877, Beland, the patentee, under whom complainants claim title, leased or assigned his patent to Flavius J. Underwood, for a period of 17 years from its date, subject to a royalty of two dollars for each track-drill manufactured by Underwood. Subsequently, Underwood assigned to Perrin G. March, one of the complainants, one-third of the interest he had thus acquired, and to Andrew Warren another third, and the three added to this tenancy in common of the patent a copartnership to operate under it. During the existence of this copartnership, Underwood invented another track-drill, and, by agreement with his copartners, secured a patent on the same on the twentieth of April, 1878, which is numbered 205,-927, and is the one under which the defendant in this case is operating. This patent was issued to Perrin G. March, Andrew Warren, and Flavius J. Underwood. In November, 1878, the copartnership between Underwood, March, and Warren was dissolved by mutual consent, and the agreement of dissolution was such that Underwood transferred to them jointly the remaining interest which he held in

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

the Beland patent, and Warren and March transferred to Underwood their interest in the patent No. 205,927. This is a full and absolute assignment of the interest of March and Warren to Underwood, his heirs and assigns. On the sixteenth day of November, 1878, Warren and March, then lessees of the Beland patent, and Underwood, as sole owner of his own patent, entered into an agreement as to the price which should be charged for drills which they were respectivly to manufacture under the two patents. Thereafter, on the twenty-fifth of February, 1881, Beland assigned the interest remaining to him in his patent to Rumsey. Whether this transfer was made to Rumsey for his benefit, or was merely colorable, and for the benefit of Warren and March, is a question upon which there was evidence both ways. The defendants claimed that the evidence established the latter state of facts conclusively.

It is now claimed by the complainants that clamp-drills manufactured under the Underwood patent infringe the Beland patent, and they ask for an injunction to restrain their manufacture and sale, and for an account.

Under this state of facts, the defendants insisted, among other things, that complainants Warren and March were estopped from claiming that drills manufactured under the Underwood patent, No. 205,927, are in infringement of the Beland patent, and that in any event the Underwood patent does not infringe the Beland patent. The Beland patent is a combination consisting of the following parts: An open rectangular iron or steel frame, at the open end of which the side bars are bent at their ends, so as to engage the lower outer flange of the rail, and are offset so as to adapt the ratchet-drill to the proper position for use. The side of this rectangle, opposite the rail to be treated, or the open side, consists of two parallel bars, between which a flanged nut is placed, and so adjusted as to slide between these parallel bars at will. This nut is bored and threaded to receive and hold a screw, which is to be so operated as to furnish the motive power of the drill when in operation. This feed-screw has a hand wheel or lever attached at the outer end, by means of which the motive power is communicated to the drill. The inner end of this drill is made concave to receive the outer end of a rachet-drill. When thus connected, this screw may be turned by the hand when the drill is being operated, and the drill projected forward as rapidly as necessary, until it has pierced the rail. Inasmuch as the drill must receive its motive power from this feed-screw, when held by this nut, it becomes indispensable to this patent that the nut which holds this screw shall be held firmly in position, so as to enable the screw to force the drill forward, and this nut must be so held that it can carry and permit the operation of the feed-screw through its center. For this reason the nut is placed between and held by parallel bars. The machine is operated by working the ratchet-drill with one hand, and the feed-screw with the other. No one of the parts is claimed as

new, but combination of all these parts alone is secured by the patent.

The Underwood patent, No. 205,927, has the open rectangular iron or steel frame, with the ends of the sides which approach the rail so bent as to engage the lower and outer flange. On the side opposite the rail to be pierced, and underneath the single bar which forms that side of the rectangle, is a bail so attached to the frame as to swing out and enable the frame to become firmly attached to the rail, and to hold the frame in position while the drill is in use.

In place of the parallel bars made necessary in the Beland patent, there is here a single bar, which forms this side of the rectangle. On this bar a mortised center-piece is placed, and made to slide upon the bar, and is held rigidly in position by a key or set-screw. On the inside of this center-piece is a counter-sink or hole to receive the center of the ratchet-drill. This center-piece is moved along this single bar to the place opposite the hole to be drilled in the rail and then made fast, and the ratchet-drill applied. In this device the motive power which is communicated to the drill is in the drill itself; that is, to the frame adjusted, as described, the ordinary ratchet-drill is applied, which has its own motive power. Besides omitting the parallel bars and the nut holding the feed-screw, the Underwood patent has added the bail and the device for holding the support of the drill fast; that is, the set-screw or key. Thus the combination found in the Beland patent is not found in the Underwood patent.

I dismiss this bill on two grounds: *First,* that the parties plaintiff here—two of the three, at least—are estopped. *Second,* that there is no infringement.