DEY TIME REGISTER CO. v. W. H. BUNDY RECORDING CO.

(Circuit Court of Appeals, Second Circuit. April 4, 1910. On Petition for Rehearing, May 2, 1910.)

No. 195.

1. PATENTS (§ 62*)—ANTICIPATION—WORKMAN'S TIME RECORDER.

The Dey patent, No. 786,011, for a workman's time recorder, using a two-color ribbon, shifted automatically to print regular records in one color and irregular records in another, held void on the evidence for anticipation by prior public use of the device by another; also held not infringed, if conceded validity.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. § 62.*]

2. PATENTS (§ 310*)—SUIT FOR INFRINGEMENT—PLEADING—WAIVER OF OBJECTIONS.

The objection that no notice of the defense of prior use in an infringement suit was given as required by Rev. St. § 4920 (U. S. Comp. St. 1901, p. 3394), cannot be raised where such defense was developed on cross-examination of complainant's witnesses, and was argued in both the Circuit Court and Circuit Court of Appeals without objection by complainant or request for leave to take testimony on the question until after the decision of the appellate court.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 532; Dec. Dig. § 310.*]

3. PATENTS (§ 324*)—SUIT FOR INFRINGEMENT—PRACTICE.

To require the amendment of the pleadings in a patent suit, and permit the taking of further evidence after the case has been finally decided by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

the Circuit Court of Appeals, would introduce a novel practice, and one not to be encouraged.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 600; Dec. Dig. § 324.*]

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit in equity by the Dey Time Register Company against the W. H. Bundy Recording Company. Decree for defendant, and complainant appeals. Affirmed.

This cause comes here upon appeal from a decree dismissing the bill in a suit for infringement of letters patent 786,011, issued March 28, 1905, to John Dey and Alexander Dey for improvements in time recorders. The opinion of the Circuit Court will be found in 169 Fed. 807.

Drury W. Cooper and John C. Kerr, for appellant.

Arthur E. Parsons, William F. Hall, and Frederic G. Bodell, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The exhaustive opinion of Judge Ray fully sets forth the particular improvement which it is alleged that defendant infringes. Briefly stated it consists in providing a workman's time recorder with means adapted to print regular records in a certain color and irregular records in a certain other color. As appellant expresses it in his brief the invention is:

"The automatic or clock-controlled time printing means that prints the regular records in one color, and, without supervision or resetting, makes the irregular or short-time records of a different hue."

This result is accomplished by the use of a two-color printing ribbon interposed between the type wheel and the platen, which may be shifted laterally, so that when one color registers with the type wheel the impression is in that color, and when the ribbon is shifted so that the other color registers with the wheel the impression is in that color. There are 66 claims. Infringement is charged of Nos. 35, 54, 60, 61, 62, 63, and 64 only. In these claims the shifting of the ribbon is automatic and clock-controlled. Complainant concedes that a manually operated ribbon device is positively excluded from these claims. Of course, it is only with the automatic, clock-controlled shifting ribbon that this case is concerned.

We do not find it necessary to review the discussion of Judge Ray as to the construction of the several claims, and the differences between the patented device and the device of defendant. This opinion will be confined to a defense apparently not made prominent in the Circuit Court, but which seems to us effectually to dispose of the case.

Prior to the application for the patent there were in existence the complainant corporation and the International Time Recording Company, both engaged in the manufacture and sale of time recorders and actively competing with each other. Since January, 1907, they have been brought under common control through the purchase by the In-

ternational of the Dey Company stock. There was also a corporation, known as the American Type Founders' Company, connected with which was one Walter S. Marder. Complainant, in order to establish some particular point, called Charles U. Briggs, a foreman of the International Company, who upon cross-examination testified that said company had made two-color ribbon recorders, which operated some manually and some automatically; also that his "recollection was that the first automatic two-color ribbon machine was completed some time in September, 1904." Complainant then called the secretary of the International Company, who on cross-examination testified, on reference to the books and records of that company, that it shipped on September 12, 1904, an automatically shiftable two-color ribbon mechanism. Complainant frankly conceded that this mechanism would be covered by the claims in suit and that the making of such a mechanism prior to the date of application (November 15, 1904) is proved. The burden is upon the complainant to show the production by the patentees of the same operative mechanism prior to September 12, 1904. It is necessary, therefore, to examine critically the testimony relied upon to establish that proposition. Taking it up in the order in which it appears in the record, we find the following:

Thomas G. Sanders testified in July, 1906, in an interference between Marder and the patentees; Marder contending that he had first suggested the idea of a shifting two-color ribbon to the Deys and others. The result of the interference was adverse to Marder; but that result does not establish the proposition as against the rest of the world that the patentees had perfected their invention prior to September 12, 1904. It happened that, when Sanders and the succeeding three witnesses were examined in the interference proceeding Marder's counsel was not present, and therefore these witnesses were not cross-examined. That circumstance, also, is not material. The testimony was stipulated into the record in this suit as what the witnesses would have testified if they had been recalled. We merely take their testimony as being all that complainant here has elicited from them in support of the proposition it is undertaking to establish.

Sanders testified: That he had been in the employ of complainant as a mechanic in their factory at Syracuse for upward of seven years, and was familiar with the manufacture and construction of time recorders. That, under instructions from John and Alexander Dey, the active heads of complainant's business, he constructed a time recorder with a shiftable two-color ribbon, whereby records of different classes could be printed in distinctive impressions. He was foreman at the time, and did the work with the assistance of another workman, John Wendel. That he began to build it in the early part of September, 1903, fixing the date by the circumstances that the State Fair was held in Syracuse in 1903 from September 7th to 12th, and he was so busy with this particular work that he could not get away to attend the fair. That the factory was moved from State street to West street in January, 1904, and he began on this machine about four months before the moving. That work on the machine was continuous, and it was completed during October, 1903, and tested to show that it would work satisfactorily. His description shows that this machine was the

same as that of the patent, except that the arms which carried the ribbon were moved by hand. That this machine was kept in the factory for a short time, and then shipped to a user. That while he was at work on this first machine Alexander Dey gave him instructions as to another design of two-color ribbon recorder; the principal feature of difference being that the ribbon was shifted automatically. That work was begun on this second machine in the latter part of October, 1903, right after the completion of the first machine. The work on it was continuous, and it was finished in the latter part of January, 1904, after they had moved the factory. He did not remember what was done with this first automatic machine after it was tested and found satisfactory. Afterwards other machines were built along the same lines.

John Wendel testified: That he was in the employ of complainant as a mechanic from 1895 to 1906. That he worked on two-color ribbon time recorders under Alexander Dey's instructions. That Sanders was there all the while, and kept watch of the work. That he received his first instructions in regard to the machine in the first part of August, 1903, and worked at it right along "quite a while" until it was finished, when it was tested and sent away. That this first machine operated by hand, and after it was built he assisted in building another machine under Dey's directions, which operated automatically. He did not definitely remember the dates in connection with this machine, only that it was taken up after the hand machine and finished some time after that. That they moved some time in January, 1904, and that he began work on the two-color proposition in August before they moved.

Alexander Dey, one of the patentees, testified: That he came here from Scotland in May, 1903, joined his brother at the factory, and from the moment he arrived set about putting their ideas on two-color printing into practical shape. That some time in August Wendel as mechanic and Sanders as foreman were set to work on the hand-operated machine, which was completed, tested, and worked beautifully; and that they immediately set to work to complete the application of the automatic shifting, "which was a far more serious matter." That to the best of his recollection Wendel and Sanders started work in August, or most certainly by the early part of September, 1903, and the first hand-operated machine was completed by October 15th. That they did not intend or wish to put the hand-operated machine on the market, and only consented to do so later on from urgent representations from their agents. That the first automatic machine was completed and tested some time in February, 1904, and shipped to a user about the end of March. The witness said that the elements by which he fixed these dates were "the changing of the factory, my own arrival in this country, the time necessary to make the various changes in the machine, and the changing of Wendel from one department to another." He referred to no records or dated documents to verify his dates.

John Dey testified: That the work on the first machine was begun by Sanders and Wendel in the latter part of July or the early part of August, 1903, and that the hand-operated machine was completed, so

·far as the mechanical part was concerned, not later than October 15, 1903, and shipped to a user about the first week in January, 1904. That the first automatic machine was finished, so far as he remembered, in February, 1904, and ultimately, after testing, shipped to a user about the 20th of March. In response to the question how. he fixed these dates he replied:

"The first date is fixed by the arrival of Alexander Dey in this country in the latter part of May, 1903. John Wendel· began work in the room of which Thomas Sanders was foreman on the 1st day of August, which fixes approximately the date at which work began on the two-colored machines. The date of shipment of machines is fixed by the moving of the factory the first of January, 1904. We had the hand-operated machine ready at that time, and the automatically changed two-colored ribbon well advanced."

That the testimony of these four witnesses is entirely honest we have not the slightest doubt. We are satisfied that the date when Alexander Dey came to this country, upon his retirement from civil service in Scotland at the age of 60, is indelibly impressed on his memory. Nor is there any reason to doubt the accuracy of the witnesses who testified in 1906 that the factory was moved in January, 1904. Their recollection, however, as to other dates, fixed merely in relation to these. events, without further checking by recorded dates, is open, of course, to the possibility of error. Bearing upon this question we have a series of signed and dated documents in the form of letters passing between the complainant company, Rockwell, its manager, Chapman, one of its selling agents, the International Company, the American Type Founders' Company, and Marder in their employ.

On August 4, 1903, Chapman writes to the Dey Company, asking if they had ever considered the question of fitting registers with two ribbons of different colors, suggesting that it may be rather a difficult thing to accomplish, but it would seem as if it might be possible. To this the company replied the next day that the question had been up with them for two or three years, and "we will probably take it in hand when we get through with present improvements on the card."

On August 18th Chapman writes to the Dey Company that the American Type Founders' Company wish to purchase a time recorder for a new plant which will be finished within 60 days; that they wanted the time printed on pay envelopes, instead of cards, and wanted two colors; and that he had explained to them that a two-color proposition was under consideration by the Dey Company, but that it could not hope to have the machine ·ready and so fitted by the time they required it. On September 29, 1903, Rockwell writes to the Dey Company, inclosing a trial order from American Type Founders, giving in detail their requirements as to envelopes, and stating that:

"They have an idea with reference to two colors to be used on the ribbon, concerning which [he] will write later."

The company replied to Rockwell on October 1, 1903, stating they would have no difficulty in meeting requirements as to cards, and adding:

"We will not promise to have the two colors on the ribbon on the one sent for trial: but. if we get the full order, we will agree to put two-colored ribbons on them."

On October 20th Rockwell writes to the Dey Company, stating in detail the particular shifts of color which the American Type Founders' Company wanted. He referred to the letter of October 1st, and expressed the hope that the two-color ribbon would be put on the trial machine. The Dey Company replied on October 22d:

"In the American Type Founders case we now find everything right for our standard register, except the two-colored ribbon. When we stated that we would put such ribbons on if we got the full order, we understood that the red would be used only in the morning and noon for those late; but it now becomes quite a different proposition, and we cannot make any statement without considerable thought, and this we cannot give for some days."

Rockwell wrote again October 23d, stating among other things that in his conversation with the Type Founders people he said nothing about changing the ribbon automatically; that he presumed it would be changed by hand. To this the company replied October 24th saying:

"This case is very much simplified by the idea of changing the colors by hand. We assumed that you meant automatic operation. At the same time we are very unwilling to get up a machine for trial with this included. You must remember that it has never been done, and it may mean weeks of experimenting, and we have too many new ideas on hand to take this one up without knowing for certain that we have the full order."

They offer to send on for trial a regular standard machine (single color) with envelope cards. On November 12th the International Company advised the Type Founders' Company that it would put a two-color shifting ribbon in the trial recorder it was making. On November 18, 1903, Rockwell wrote to the Type Founders' Company. He testifies that this letter was written of his own motion and without prior consultation with the Deys. In this letter he states that a great deal of work and experimenting upon the two-color machine is necessary before they can be absolutely sure it will work perfectly, and that he will send them a standard single-color machine, promising to introduce two-color device afterwards. On November 21st Rockwell advised the Dey Company that the International had offered to send the Type Founders a two-color record on trial by December 1st, whereupon the latter company stated that "our trial" would not be satisfactory without the two-color ribbon. The company replied that this was considered a "bluff," and that the standard trial machine would be held back. The International two-color machine, hand-operated, was received by the Type Founders' Company early in December. Being advised of this on December 14th, the Dey Company wrote to Rockwell, December 18, 1903, that they will "give them a two-colored ribbon very soon." Rockwell writes on December 29th that it had not yet been received. The Deys testify that this machine, a hand-shifted one, was finally sent the first week in January, 1904; but that statement is made from memory only. No record was put in evidence or apparently referred to.

It is quite apparent that the witnesses are astray as to the dates when the first or hand-operated machine was perfected, and it is certainly not unreasonable to suppose that the same witnesses, testifying from

178 F.—52

memory only, may also be astray as to the date when the first Dey automatic shifter was perfected. The defendant having antedated the filing of the application by record evidence so convincing that it stands conceded, the burden is upon complainant to carry the date of invention still further back by evidence that convinces beyond any reasonable doubt.

"The complainant's patent antedating the defendants, it was incumbent upon them to prove beyond a reasonable doubt that theirs was the prior invention. This they have done by proof so positive that the complainant's counsel conceded on the argument that the date of their invention was January 15, 1877, 11 months prior to the filing of the complainant's application. This date being fixed, the burden was transferred to the complainant to satisfy the court by proof as convincing as that required of the defendant that his invention preceded theirs. The rule in such cases is very strict. It is so easy to fabricate or color evidence of prior invention, and so difficult to contradict it, that proof has been required which does not admit of reasonable doubt." Thayer v. Hart (C. C.) 20 Fed. 693.

There is nothing in this case to suggest any fabrication or attempted coloring; but the human memory for dates is often inexact, and it is a fair rule which lays the same burden on either side which seeks to antedate an occurrence the time of which is established by a trustworthy record. There is no proof that any records of complainant have been lost by fire or other mischance, and, since none are produced to corroborate the contention that it had perfected the automatic ribbon shifter earlier than September 12, 1904, we are of the opinion that the defense of prior public use by some one other than the inventors is established.

The decree is affirmed, with costs.

## On Petition for Rehearing.

In our opinion filed April 4, 1910, we held that there was no patentable novelty in the Dey device, because it appeared that an automatic two-ribbon machine had been put on the market by some one else prior to date of application, and complainant had not by sufficient evidence carried his date of invention back of such machine. Rehearing is asked for on the ground that special notice was not given in the answer that this particular prior reduction to practice would be shown, citing Parks v. Booth, 102 U. S. 96, 99, 26 L. Ed. 54, and other cases.

The practice provided for in the statute (section 4920 [U. S. Comp. St. 1901, p. 3394]), is for the protection of the complainant, so that he may not be surprised at the trial by the introduction of testimony which he has had no opportunity to provide for or to controvert. It would hardly seem that such objection can be sustained at this stage of the case. The testimony as to this prior machine was brought out on the cross-examination of complainant's witnesses. It was very positive and specific, and supported by record entries in the books of the manufacturer. Upon the argument in the Circuit Court, this defense was treated at considerable length in defendant's brief, but no application was made to take evidence to controvert it. The same defense appeared on the brief of defendant in this court, and was referred to at length in the oral argument; but, so far from objecting that the testimony could not be considered, counsel for complainant expressly conceded in

open court that the so-called International automatic two-ribbon machine antedated the date of application by several weeks.

As an alternative relief complainant asks that defendant be required to amend its answer, so as to set up this prior device, and that complainant be then accorded the opportunity to put in proofs to carry the date of invention back of this International machine. The petition is accompanied with an affidavit tending to show that this could be done by entries in the record books of the Dey Company. To allow further evidence to be taken after decision in the Court of Appeals would introduce a novel practice, and one which should not be encouraged. However, we may say that since this petition was filed we have gone over those parts of the record which our former decision made it unnecessary for us to examine critically, and are satisfied that the Circuit Court was correct in holding that the claims here in controversy must be so limited by their terms that defendant's device cannot be held to infringe. This conclusion would equally result in a dismissal of the bill.

The petition for rehearing is denied.