UNDERFEED STOKER CO. OF AMERICA v. RILEY et al.

(District Court, D. Massachusetts. September 23, 1913.)

No. 459, Equity.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—UNDERFEED FURNACE.

The Daley patent No. 644,664 for a furnace having an underfeed *held* not anticipated, valid and infringed on motion for a preliminary injunction.

2. PATENTS (§ 297*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

When a patent has been sustained after a thorough defense by competent and diligent counsel, and the defendants' structure in a subsequent case is substantially like that involved and held to infringe in the prior suit in essential particulars, the complainant should be given the benefit of such adjudication on an application for preliminary injunction, and the burden rests on the defendant to distinguish the cases.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 481–488; Dec. Dig. § 297.*]

In Equity. Suit by the Underfeed Stoker Company of America against R. Sanford Riley and others. On motion for preliminary injunction. Motion granted.

Fish, Richardson, Herrick & Neave, F. P. Fish, and J. L. Stackpole, all of Boston, Mass., for complainant.

Louis W. Southgate, of Worcester, Mass., for defendants.

BROWN, District Judge. [1] This is a petition for a preliminary injunction against infringement of letters patent No. 644,664, March 6, 1900, to F. A. Daley, for furnace.

This patent was before me in Underfeed Stoker Co. of America v. American Ship Windlass Co. (C. C.) 165 Fed. 65, 77: In that case it was held that the stoker, shown in letters patent, to E. E. Taylor, No. 792,862, June 20, 1905, infringed the Daley patent, as well as other patents then in suit.

The Daley patent was considered also in American Stoker Co. v. Underfeed Stoker Co. of America (C. C.) 182 Fed. 642, 652, in which case was also considered the Garden patent, No. 648,251. The decision in respect to the Garden patent, and the distinction between it and the Daley patent, renders it unnecessary in the present case to refer further to the Garden patent, though the defendants cite it in defense.

Upon appeal the Circuit Court of Appeals for the Third Circuit affirmed the last-named decision. 188 Fed. 314, 110 C. C. A. 292.

I do not find in the defendants' affidavits any definite denial that the defendants' device, known as the "Riley Stoker," possesses the characteristic features of the Daley patent, namely a large air-chamber beneath the retort and fuel-bearing surfaces, into which the air is introduced under pressure, and in which the air has an opportunity to circulate and become heated by contacting with the heated metal portions of the retort and fuel-bearing surfaces, thereby extracting heat from these surfaces and so prolonging their life, and at the same time being itself heated and thus becoming more efficient to promote combustion when introduced into the combustion-chamber.

The affidavit of Mr. Jackson, complainant's expert, in reply, correctly points out this omission in the defendants' affidavits.

In the affidavit of Mr. Browne, defendants' expert, it is conceded that claims 3, 4, and 5 of the Daley patent are directed to an organization in which the fuel-supporting means need not be perfectly imperforate. He states, however, that it is his opinion that the prior art is of such character that the subject-matter of claims 3, 4, and 5 possesses no novelty unless construed by the court to mean that such leakage or perforations as may exist do not permit the flow of any substantial amount of air into the fire box. He states that if these claims are to be so construed as to permit the presence of such apertures in the fuel-supporting means as to permit the flow of a substantial portion of the air, then there is no novelty in the subject-matter of these claims in view of the prior art.

Daley, however, says:

"The furnace, constructed in accordance with the preferred embodiment of my invention, employs side dead plates which are imperforate, or sufficiently so to maintain the air forced into the air-chamber beneath the side fuel-support under pressure, so that the air will be forced in jets directly from the

air-chamber through the tuyère-openings into the retort. I do not wish, however, to be limited to a construction in which the side fuel-supporting means along the upper edges of the fuel retort are perfectly imperforate."

To determine the question whether the Riley stoker contains the substance of the Daley invention by considering whether or not in the Riley stoker a substantial amount of air passes through the fuel-supporting plates is not, in my opinion, the correct method of comparing the two structures, since they may resemble each other in substantial particulars, though differing in this particular. It is not correct, I think, to say that Daley requires that his side plates shall prevent any substantial passage of air through them. Such requirement is not expressed, nor is it necessarily implied.

The defendants attempt to bring the Riley structure into substantial resemblance with devices of the art preceding Daley by contending that the fuel-supporting devices of the Riley Stoker are "grates." It is not denied that the Riley stoker has tuyère openings at the side which are substantially similar in function and operation to those of the Daley patent. In the earlier Jones patent the fuel-supporting means were grates. By closing these grates and eliminating the pipes by which air was supplied to Jones' tuyères, Daley formed his air-chamber, whence the air flowed under pressure in jets controlled by the small tuyère openings at the top of the retort. It appears, however, that it is not necessary, in order to form an air-chamber with the function of Daley's air-chamber, that the fuel-bearing means be completely closed; nor is it made to appear that it is essential that they be closed to such an extent as to prevent the escape of an amount of air which might be termed a "substantial amount"; i. e., an amount which might be regarded as substantial as an aid to combustion in the combustion-chamber, but which would not be regarded as substantial in the sense that it interfered with the functions of the air-chamber. If the defendants' air-chamber performs the functions of Daley's air-chamber, the fact that it may permit the escape of air through the fuel-supports is immaterial upon the question of infringement, even if some improvement may result.

It is also argued that Riley's fuel-supporting means has the essential characteristics of a grate; i. e., to support the fuel and to permit the passage of air into the fuel; but there seems to be an essential difference between the so-called grates of Riley and the grates of the prior art.

To support the fuel and permit the passage of air are doubtless functions of a grate, but it is hardly a usual function of a grate to serve as a wall of an air-chamber to hold air under pressure, or to resist or diminish the flow of air. Usually only such grate bars are employed as are necessary for the support of the coal, and it has not been made to appear in this case that it is usual to diminish the openings of a grate to the small comparative size of those found in the Riley fuel-support. The small number and small size of Riley's openings, and the large proportion of imperforate surface, shows that Riley's fuel-supports are intended to be sufficiently imperforate to serve as a wall of an air-chamber having the functions of Daley's chamber.

The defendant also refers to the passage of air in substantial quantity through spaces between contiguous sliding grate sections. The complainant contends that all of the openings through which air flows from the Riley air-chamber are tuyère-openings, for the reason that they are small passages through which the air is forced in different streams into the appropriate parts of the furnace, after having extracted the heat and itself become heated.

A tuyère and a grate have this in common, that it is a function of each to admit air; but ordinarily a tuyère is designed to admit it in definite quantity and direction, while a grate is designed with large and numerous openings, through which air can pass into the combustion-chamber in a general stream without definite and predetermined direction. The openings in the Riley fuel-support fall within the first rather than the second class, and devices of the prior art into the second class.

The prior patented art presented by the defendants is to a considerable extent the same that was before the court in Underfeed Stoker Co. of America v. American Ship Windlass Co. (C. C.) 165 Fed. 65. The following patents were in the former case: Howell, 54,730, May 15, 1866; Smith, 199,000, January 8, 1878; Roney, 409,304, August 20, 1889; Jones, 409,792, August 27, 1889; Wiesebrock, 439,738, November 4, 1890; Jones, 470,052, March 1, 1892; Shinners, 552,335, December 31, 1895; Roe, 595,837, December 21, 1897.

The additional American patents are: Wilkinson, 480,538, August 9, 1892; Box, 549,868, November 12, 1895; Garden, 648,251, April 24, 1900.

British patents are: Smith, 170, January 15, 1876; Hawksley et al., 3,095, March 10, 1885; Brook, 1,140, January 20, 1892; Garden, 4,367, February 28, 1895; Wilton, 9,309, 1895.

After a re-examination of the patents formerly considered and an examination of the new patents cited I am of the opinion that in respect to the fundamental features of the Daley patent there is nothing in the prior art as presented by the defendants which can be regarded as an anticipation of the Daley patent. These patents are dealt with specifically in the reply affidavit of Mr. Jackson, and upon an examination of them I am of the opinion that he draws proper distinctions between these patents and the device of the patent in suit.

[2] The defendants invoke the rule that in doubtful cases a preliminary injunction should not issue, but it should also be borne in mind that when a patent has been sustained after a thorough defense by competent and diligent counsel, and when the defendants' structure is substantially like that involved in the former litigation in essential particulars, the complainant should be given the benefit of such adjudication on an application for preliminary injunction, and that the burden rests upon the defendant to distinguish the cases.

After reading and re-reading the affidavits, and after an examination of the prior art as presented by the defendants' patents, I am of the opinion that this is a proper case for the granting of a preliminary injunction.

A draft decree may be presented accordingly.