WEBER ELECTRIC CO. v. NATIONAL GAS & ELECTRIC FIXTURE CO.
(UNION ELECTRIC CO., Intervener).

(Circuit Court of Appeals, Second Circuit. February 10, 1914.)

No. 122.

PATENTS (§ 328*)—VALIDITY—PATENTABLE NOVELTY—INCANDESCENT LAMP SOCKETS.

Weber patent, No. 743,206, for an incandescent light socket, consisting of a snap connection between the sleeve and cap, *held* to involve patentable novelty, to be valid, and infringed.

Appeal from the District Court of the United States for the Southern District of New York.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This cause comes here upon appeal to review a decree of the District Court, Southern District of New York, holding a patent to be valid and infringed as to its first four claims. The patent is No. 743,206, issued November 3, 1903, to August Weber for an incandescent light socket. The opinion of the District Judge will be found in 204 Fed. 79. See, also, 212 Fed. 950, 129 C. C. A. 470.

F. C. Lowthorp, of Trenton, N. J., for appellant.

F. C. Curtis, of Troy, N. Y., for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The specifications and claims of the patent and the prior art are all set out very fully in Judge Ray's opinion, to which reference may be made.

When the patentee's snap connection between the sleeve and cap is first seen, the natural impression is that there could be no patentable invention in so simple a device. But perusal of the record leads quite persuasively to a different conclusion. In the first place, the precise combination of interlocking parts is undoubtedly novel; there is nothing just like this in the prior art. Even the Bray patent, which is relied upon, does not show just the effective clutch of the patent, and the "cover for a paint can," with which Bray's patent is concerned, is certainly not in an analogous art to that of fixtures for electric lights. In the second place there is more than mere novelty to indicate invention. The testimony of the witness Ball is most persuasive. He has been engaged in this very art since 1888, appreciated the evil results of the old style of clasp (bayonet joints and screws) and the difficulties to be overcome in devising something different. For some period before Weber's combination came out, the witness with other skilled workmen in the same factory devoted a considerable part of his time to designing sockets which would remedy existing defects. Not only did he fail to produce any, but when he first saw Weber's new snap connection he did not believe it would be practicable. He says:

"When I saw Mr. Weber's socket I was surprised at the audacity of the design for the reason that we had been working a number of years to perfect the socket put out by the General Electric Company, and, notwithstanding the fact that we knew of the weakness in the side screws, we were not able, through the ingenuity of myself and others, to overcome this objection. When I saw Mr. Weber's method of overcoming it I did not think it would be successful. There were too many uncertainties involved, the accuracy with which it had to be made, the resiliency of the metal, the irregularities that would creep in in manufacture and the seriousness of the lock giving way, all seemed to work against the successful introduction of a snap catch. The troubles with the side screws and other means of holding the shell and cap together we knew of. It was a common sight in those days to see sockets in fixtures and in other places with the shell entirely gone. The trouble was in the vibration loosening the screws, allowing them to drop out and the socket to fall to pieces. As I say it (the snap catch) would have to be very accurately made in order to be as safe as the side screws. At that time there were a number of manufacturers of sockets—eight or nine of them—each one showing considerable ingenuity in the development of the art, but in all of their sockets, they resorted to the side screws. This confirmed my own opinion regarding the side screws, that it was better to submit to known disadvantages and troubles than to court new ones."

This witness was not contradicted, nor did cross-examination in any way qualify his very positive statements.

Upon the record we are persuaded that, simple though it was, Weber's snap connection was a meritorious invention and are not satisfied that defendant's modification, with its "bridge" across the two apertures for engagement escapes the claim. It is not necessary to add anything to Judge Ray's full discussion of the case.

The decree is affirmed, with costs.