## WEBER ELECTRIC CO. v. CONNECTICUT ELECTRICAL MFG. CO.

(District Court, D. Connecticut. April 5, 1919.)

1. PATENTS ☜303—INFRINGEMENT—PRELIMINARY INJUNCTION—DISCRETION OF COURT.

The exercise of the discretion of the trial court in passing on motion for preliminary injunction in a suit for infringement of patent does not extend to a refusal to apply well-settled principles of law to a conceded or indisputable state of facts.

2. PATENTS ☜297(2)—PRELIMINARY INJUNCTION—PRIOR ADJUDICATIONS.

Where plaintiff's patents have been held not anticipated, valid, and infringed in numerous prior suits, such prior adjudications justify plaintiff in seeking the extraordinary remedy of preliminary injunction against defendant, charged with infringement, unless it may fairly be said that defendant's device does not infringe the claims in suit.

3. PATENTS ☜328—INFRINGEMENT—ELECTRIC LIGHT SOCKETS.

Weber patents, No. 743,206, claim 4, and No. 916,812 claim 1 for incandescent electric lamp sockets, *held* infringed by defendant, so far as shown by the evidence on plaintiff's motion for preliminary injunction.

In Equity. Suit for infringement of patents by the Weber Electric Company against the Connecticut Electrical Manufacturing Company. On motion for preliminary injunction. Injunction issued.

Frank C. Curtis, of Troy, N. Y., for plaintiff.

Philipp, Sawyer, Rice & Kennedy, for defendant.

THOMAS, District Judge. This is a motion for a preliminary injunction in a suit for infringement of two Weber patents, No. 743,206 and No. 916,812, for incandescent electric lamp sockets. Only claim 4 of the first patent and claim 1 of the second patent are in issue.

At oral argument on this motion the court suggested that its general policy was against granting a preliminary injunction in a patent case where the defendant is, as here, a responsible and substantial concern; but an examination of the cases bearing upon the rights of the plaintiff in the circumstances of this case, and the prior adjudications respecting the claims of the patents in suit certainly justify the conclusion that the injunction should issue, unless the defendant is able to show something radically different in the construction of its device, which avoids infringement or is able to make a showing of some defense which makes the plaintiff's right doubtful.

The general rule of law is discussed by Judge Dickinson in Æolian Co. v. Cunningham Piano Co. (D. C.) 244 Fed. 478, where will be found his conclusions after a consideration of the adjudicated cases, and on page 479 he says:

"The real conclusion reached in awarding an interlocutory injunction is that under all the facts and equities so far appearing in the cause the plaintiff should be left in the undisturbed assertion of his claimed right until it is determined that his claim is groundless, subject to his liability to make good any loss thereby sustained by others. A patentee the validity of whose patent has been determined by adjudication or its equivalent may invoke the benefit of this rule with peculiar force. On general considerations the writ now asked for should be granted. The only inquiry left is whether anything has been made to appear which takes this case out of the general rule."

In Underfeed Stoker Co. v. Riley (D. C.) 207 Fed. 963, on page 966, Judge Brown says:

"It should be borne in mind that when a patent has been sustained after a thorough defense by competent and diligent counsel, and when the defendant's structure is substantially like that involved in the former litigation in essential particulars, the complainant should be given the benefit of such adjudication on an application for preliminary injunction, and that the burden rests upon the defendant to distinguish the cases."

[1] The defendant urges that the discretion of the court should not be exercised to restrain it from manufacturing and vending its device, as it would work a great hardship; but the exercise of the discretion of the court in passing upon a preliminary injunction does not extend to a refusal to apply well-settled principles of law to a conceded or indisputable state of facts.

[2] What are the conceded or indisputable facts as disclosed by the record here respecting prior adjudications? These patents have been in successful litigation before different nisi prius and appellate courts for a period of years. The patents have invariably been held not anticipated, valid, and infringed.

In Weber Electric Co. v. National Gas & Electric Fixture Co. (D. C.) 204 Fed. 79, Judge Ray held both patents valid and infringed. This ruling was sustained by the Circuit Court of Appeals for the Second Circuit. 212 Fed. 948, 129 C. C. A. 468.

Other adjudications respecting either one or both of the patents and the claims in suit may be found in Weber Electric Co. v. Union Electric Co. (D. C.) 226 Fed. 482, and in Weber Electric Co. v. E. H. Freeman Electric Co. (D. C.) 253 Fed. 657, both adjudications in the District Court of New Jersey in the Third Circuit.

In Weber Electric Co. v. Wirt Mfg. Co. (D. C.) 226 Fed. 481, Judge Dodge, in the First Circuit, held patent No. 743,206 valid and claim 4 of the patent here in suit infringed.

Again the matter was before the Circuit Court of Appeals for the Second Circuit on an appeal from a decree of the District Court for the Southern District of New York in Weber Electric Co. v. Cutler-Hammer Mfg. Co., 256 Fed. 31, decided January 22, 1919, wherein an injunction was granted, which ruling the Circuit Court of Appeals sustained.

In Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 489, 20 Sup. Ct. 708, 710, 44 L. Ed. 856, Mr. Justice Brown, speaking for the court, said:

"The obligation to follow the decisions of other courts in patent cases of course increases in proportion to the number of courts which have passed upon the question, and the concordance of opinion may have been so general as to become a controlling authority."

The repeated successes in the adjudicated cases seem to clearly bring the plaintiff within the rule and to justify the granting of the motion. Indeed, it would be very difficult to conceive a case where a plaintiff could rely with greater force upon prior adjudications to assert his right to an injunction pendente lite.

In this connection Judge Hough, speaking for the Circuit Court of Appeals in the Cutler-Hammer Case, supra, says:

"These patents have thus for years, and until the term of the older grant is nearly spent, succeeded in the courts, and in the business world. They have become and are the foundation of a large business, in no small part based upon the above-recited judicial recognition, the propriety of which is now challenged by a new defendant, who makes and sells what is asserted to be no infringement, even should the scope and interpretation heretofore so widely given to Weber's patents be still adhered to."

And while, as Judge Hough further says, "each succeeding defendant * * * is not estopped by previous litigations from advancing defenses often overruled," nevertheless this case inclines me to hold, as he has held that "there are some matters which even in patent suits must finally cease to merit discussion." Thus far there can be no possible escape from the conclusion that the prior adjudications justify the plaintiff in seeking this extraordinary remedy at this stage of the case.

[3] So it only remains for me to decide whether upon the evidence in this proceeding it may be fairly said that the defendant's structure does not infringe the claims here in suit. And upon this point the language of the Circuit Court of Appeals in the Cutler-Hammer Case is helpful. They say:

"We therefore adhere to the following fundamental findings, viz. that by January 1, 1898, Weber had embodied the invention described and claimed in his earlier patent, which invention is a *positive* lock for the engagement of the sleeve and cap of lamp sockets, as distinguished from any and every variety of friction device."

So, too, is the defendant's device a positive lock and not a friction device. Claim 4 of the earlier patent reads:

"In a device of the class described, and in combination a pair of members comprising a sheet-metal sleeve having a slotted end, and a sleeve-metal cap adapted to telescopically receive the slotted end of said sleeve, one of said members being provided with a recess, and the other having a correspondingly located transverse slit and the wall on one side thereof displaced to form a projection beveled or inclined toward said recessed member and terminating abruptly at said slit, whereby said members are adapted to automatically interlock with a snap action when telescopically applied to each other, and to be released by manual compression of said slotted sleeve, substantially as described."

It has been frequently held that claim 4 is entitled to a fair range of equivalents which includes the transfer of any structural feature with its function from one to another part of the device and every structural feature with its function is present in the defendant's device, as called for by this claim.

Claim 1 of the second patent is as follows:

"In a device of the class described and in combination, a pair of tubular, sheet-metal members, one adapted to telescopically receive the other, having mutually abutting cut-metal edges on the respective members to prevent relative rotative movement, and automatically interlocking means for preventing a telescopic movement of separation of one member from the other said means permitting, without manipulation thereof, the telescopic application of the members to each other."

I cannot find that the defendant avoids infringement of this claim, and in view of the prior adjudications discussion concerning it seems of no avail. The proposition is too clear to admit of argument.

The only real issue here relates to the bayonet movement, and Judge Davis, in the Freeman Case, has disposed of that contention in favor of this plaintiff, and I am in accord with his conclusions.

In view of the evidence there is nothing in the claim made by the defendant regarding laches on the part of this plaintiff. Laches cannot be fairly charged against it.

From a careful consideration of all the evidence and arguments of counsel based thereon, and without attempting to answer all the claims advanced, most all of which have been repeatedly decided by various judges adversely to the defendant's claims, I can see no escape from the conclusion that the plaintiff is justly entitled to the injunction prayed for, and it may therefore issue.