## WEBER ELECTRIC CO. v. CONNECTICUT ELECTRIC MFG. CO.

(Circuit Court of Appeals, Second Circuit. January 2, 1920.)

### No. 53.

PATENTS ⬤⚊328—FOR ELECTRIC LAMP SOCKET INFRINGED.

The Weber patents, No. 743,206, claim 4, and No. 916,812, claim 1, both for incandescent electric lamp sockets, *held* infringed.

Appeal from the District Court of the United States for the District of Connecticut.

Suit in equity by the Weber Electric Company against the Connecticut Electric Manufacturing Company. From an order granting a preliminary injunction, defendant appeals. Affirmed.

For opinion below, see (D. C.) 257 Fed. 429.

Action is on Weber patents 743,206 (claim 4) and 916,812 (claim 1). These claims were last before us in Weber Electric Co. v. Cutler-Hammer Mfg. Co., 256 Fed. 31, 167 C. C. A. 303, where the status of reported litigation thereover down to January, 1919, is summarized. Since that time the opinion of Davis, J., in Weber, etc., Co. v. Freeman Electric Co., has appeared in (D. C.) 253 Fed. 657, and the decree thereon been reversed by the appellate court of the Third circuit in Freeman, etc., Co. v. Weber, etc., Co., on August 13, 1919, and petition for rehearing denied December 13, 1919, 262 Fed. 769, —— C. C. A. ——.

The claims in suit have been too often set forth to require further quotation. They are given in Weber Electric Co. v. National Gas & Electric Fixture Co. (D. C.) 204 Fed. 79, which is the earliest discussion of the nature of Weber's achievement. The order appealed from followed the decision of Thomas, J. ([D. C.] 257 Fed. 429), who, assuming, in accord with previous rulings in this circuit, the validity and scope of the patents, remarked: "The only real issue here relates to the bayonet movement, and Judge Davis in the Freeman Case has disposed of that contention in favor of" Weber. Whereupon injunction was ordered, and this appeal taken.

C. J. Sawyer and J. J. Kennedy, both of New York City, for appellant.

Charles Neave, of New York City, and Frank C. Curtis, of Troy, N. Y., for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Infringement is the only question; it being admitted that, as records of former suits are in evidence as exhibits, evidence is exhausted, and the matter may be considered as on final hearing.

The issue is sharply defined by inquiring whether a description of defendant's socket given by plaintiff's expert is correct. He says its sheet metal sleeve has a slotted end, and the sheet metal cap is adapted to telescopically receive said slotted end; the engaging means being a pair of bayonet slots in the cap, a pair of co-operating pins on the sleeve, and a projection beveled toward the cap, formed by slitting the metal of the sleeve and forcing the wall on one side thereof outwardly. This projection on its side toward the slit ends abruptly, and slopes on the other side, as in the Weber construction; its purpose is

to engage with a recess on the cap, which is one of the bayonet slots, and, when so positively engaged, can be released only by manual compression.

Examination of a typical socket alleged to infringe shows a true bayonet fastening of cap to sleeve, secured from unintended rotation and consequent separation by a slit parallel to sleeve axis, the wall on one side of which has a cut metal projection, whose abrupt side faces the slit, and over whose bevel or incline the cut metal cap edge rides with ease, but engages said abrupt face with a snap action, as soon as the rotational movement of the bayonet lock takes place; nor can it be disengaged without manual compression of the slotted or slit sleeve, applied to the wall thereof carrying the cut metal projection.

This description of defendant's commercial article, in phrases taken from the claims in suit, must, we think, make it clear that the present socket is an improved and simplified form of Freeman's device, wherein defendant has used Weber's means of locking shown in No. 743,206, made as directed by No. 916,812, not as the sole instrumentality for keeping sleeve and cap in firm connection, but to give security to a bayonet joint, which (standing alone) is art prior to any patent here involved.

This procedure involves the addition of a rotational component to the locking scheme of Weber's specification, and (so to speak) turns Weber's lock 90 degrees from the position relative to socket axis shown by him; it no longer locks cap to sleeve by itself, but helps the bayonet joint so to do, and in our opinion furnishes the best part of the result. This enables defendant to urge that Weber's "transverse slit" is no longer his, if it is not transverse to the longitudinal socket axis, and that the rotational component of the Connecticut (or Freeman) device prevents telescopic application of the parts, for that word, as used by Weber, means only a straight thrust on engagement.

There are many patents whose range of equivalence, in view usually of prior art, but sometimes of contemporary and similar labors, is so narrow that slight changes avoid infringement of claims restricted to the specification device. The older Weber patent is not of that class. It has been recently and well said that "the view entertained by the courts in the earlier days of the life of a patent is usually a safer guide with which to judge invention and scope of claims than new and later contentions" (Mayer, J., American Graphophone Co. v. Emerson Phonograph Co. [D. C.] 255 Fed. at page 576); and we have no reason to withdraw our remark in Weber Electric Co. v. National Gas & Electric Fixture Co., 212 Fed. 948, 129 C. C. A. 468, that Weber's "combination of interlocking parts is undoubtedly novel; there is nothing just like this in the prior art."

If this is acknowledged, we consider the description of infringement given by plaintiff's expert correct; for there is nothing in the claims requiring Weber's slit to be transverse to the longitudinal axis. The requirement is that it should be "correspondingly located"; that is, it should correspond to that with which it functions. In the Connecticut socket there exist slit, recess, and projection "adapted to automatically interlock with a snap action"; they are not, to be sure, principals, they

are only accessories in the entire effort of fastening cap to sleeve, but that makes no difference in infringement. There is no such thing as a partial infringement.

Thus we do not doubt that defendant has taken Weber's lock, turned it half around, and given it a subsidiary role; it remains to consider whether the word "telescopically," or "telescopic," used in the claims, has so restricted a meaning as to enable this to be done with impunity.

If lexicographers be consulted, every dictionary suggested covers the thought of one part fitted within another, and by sliding or working, one against the other, producing prolongation or retraction. Oxford; Century; Webster; Standard. The reference is always to the "spyglass" of former days. That this instrument is best and usually elongated by a rotational movement is common knowledge; indeed, without it, no accuracy of length can be obtained. If the language of mechanics be regarded, the word is, and long has been, applied to many systems of concentric tubes, so that a "telescope screw" is a permissible locution.

Finally it is urged that in 256 Fed. 31, 167 C. C. A. 303, this court by pointing out that Weber's method of engagement was "by a straight thrust," declared (in effect) that no system of locking cap and sleeve involving a rotational component could infringe. The remark we still think true, but the inference mistaken. Weber does lock cap to sleeve by a straight thrust, but a thrust may be as straight on the equator as along the pole.

When Weber's means are the only means of locking cap to sleeve, the phrase is true in a simple sense, when they are relegated to the place of an adjunct, the operation is identical though not so apparent. That part of the defendant's socket utilizing Weber is so shaped that the thrust or power which does the final locking is along a circumference, but it is (first) straight—i. e., at right angles to the slit and the abrupt face of the projection—and (second) but a part of the movement of cap relative to sleeve, which in its totality is telescopic.

These reasons compel us to think the order appealed from right, and regretfully to differ from the views regarding scope and interpretation of these claims expressed in the recent judgment of our sister court in the Third circuit respecting the Freeman device.

Order affirmed, with costs.