PLEATMASTER, Inc., Plaintiff-Appellee,
v.
J. L. GOLDING MFG. CO.,
Defendant-Appellant,
and
H. L. Judd Company, Counter-
Defendant-Appellee.
No. 11796.

United States Court of Appeals
Seventh Circuit.
Feb. 7, 1957.

Rehearing Denied March 8, 1957.

Samuel W. Kipnis, Carl S. Lloyd, Harold L. Eisenstein, Chicago, Ill., for appellant.

Howard W. Clement, Chicago, Ill., Daniel G. Cullen, Bernard J. Cantor, Detroit, Mich., for appellee.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's suit for infringement of its patent to Solomon, No. 2,558,467, applied for January 16, 1951, and allowed June 26, 1951, having resulted in a finding that the patent is valid and infringed, upon appeal, defendant seeks to reverse, contending that each finding is erroneous.

Solomon, in his application, described a curtain hanging device capable of forming pleats at the top of the curtain without sewing the material, for curtains or draperies suspended from a rod or similar support. He disclosed an apparatus with four fingers, tines or prongs, pointing upward when it is used, with a fixed hook at the back for hanging the contraption on the rod. He provided pockets or tunnels at intervals at the top of the curtain, into which the four fingers fitted. These pockets were so spaced that when the curtain was gathered together and the fingers inserted in the

pockets, folds or pleats would result without any necessity for a seamstress.

Claim 1 is as follows: "1. For use with a drape having at its upper edge a plurality of vertically extending horizontally spaced parallel tunnels or loops closed at their upper ends and open at their lower ends, a pleater and hanger device insertable upwardly into said tunnels through their open lower ends, said device having a drape hanging hook and four coplanar closely and horizontally spaced upwardly projecting elongated vertical pleating fingers having blunted upper ends, all four of said fingers being of substantially the same length and extending the full lengths of said tunnels, and projecting well above the hook and being spaced two to each side of the hook, said fingers and hook being interconnected at their lower ends, with all four fingers coming together at their lower ends closer than at their upper ends for pinching the pleats together at the lower ends of the tunnels, the hanger and pleater being constructed of wire and being formed and dimensioned to have sufficient resilience at the lower ends of the fingers to enable all fingers to be moved manually and easily towards or away from one another to facilitate insertion of the fingers into said tunnels and to enable the intermediate fingers to be squeezed manually towards and closely adjacent the outermost fingers for a considerable distance along such fingers, the fingers having an inherent tendency to return to their original spacing after being manually squeezed together or spread apart." Claim 2 is substantially the same as claim 1, with the following addition: "the outer pair of fingers being the legs of a U-shaped piece of wire nested coplanar with and inside the first piece of wire, and the hook being an inverted third U-shaped piece of wire whose plane is normal to the plane of the first two pieces of wire, all three pieces being joined at the nested bights of the first two and at the end of one leg of the third piece." Thus we have a relatively simple device containing the necessary elements for hanging a curtain; that is,

the integrated hook and four fingers paralleling each other, extending upward into the pockets provided in the curtain, spaced at intervals as aforesaid, so that when the curtain is hung, the material, into the pockets of which the tines are placed, is drawn together in folds or pleats. The fingers are blunted, so as not to injure the cloth, instead of being pointed as they were in certain other devices known in the art.

In the prior art pleaded by defendant is Ashwell (British) patent No. 24665. He disclosed "improvements in hooks for hanging curtains," consisting of an integrated curtain hook and prongs, a device which, apparently, was intended to accomplish the results of Solomon. Ashwell showed only two prongs. Furthermore, his fingers were pointed, instead of being blunt. However, blunted prongs are shown in certain other patents, to which we shall refer. From his description, it is apparent that his device was adapted for forming pleats. So far as the number of fingers is concerned, we think invention cannot lie in a provision for four instead of two. Knight, 24522, 1904 (British), described "an improved apparatus for heading and suspending curtains", the two tines of which fitted into proper receptacles on the curtains at intervals, resulting in the material being "gathered into folds or box pleats." He specified that by the use of his improved heading and suspending device "a graceful and artistic appearance is imparted to the curtain or hanging without any supervision by or skill on the part of the operator." He asserted that the spacing of the fingers and the receptacles into which they fitted, provided "a broad box pleat formation." The ends of his prongs were blunted, not pointed, as in Ashwell. They extended above the hook, as in the patent in suit.

Steiner, No. 2,012,734, 1935, applied for and was allowed a patent for a "fixture for curtains, draperies and the like", the chief purpose of which was to permit attachment at the heading of the curtain without resorting to sewing, and which effectively "holds the pleated head-

ing in an upright position and at the same time assures a neat and natural hanging of curtains and draperies from the supporting rod." He provided a "plurality of tines or prongs", adapted to face upwardly when in position on the curtain and said that these elements served "to firmly and properly retain the pleated portion in its proper position to insure a neat and natural hanging of the curtains and draperies." Two of his prongs were somewhat longer than the other two. The pleats were formed without sewing and held in place by the device, the fingers of which pierced the material, holding it in place. Whether the tines were resilient does not appear, but, obviously, any skilled mechanic would have the choice of proper material in making the device. The bottom of the finger was united in a rounded "U" form as in Solomon, instead of being comparatively square, as in Ashwell.

Carr, No. 834,188, on October 23, 1906, disclosed a "curtain suspension hook." He provided a hook to which were added prongs adapted to enter transverse loops in a heading tape or suspension band of the curtain. He recommended two prongs parallel with the shank of the main hook, bearing small barbs, hooks or notches to prevent them from slipping out of the transverse loops in the tape. He provided, in an alternative construction, a hook with three fingers. He recognized that other workers in the art had disclosed a hook with three prongs and did not claim invention in his particular arrangement. His apparatus was of resilient wire and the prongs had blunted upper ends. Though the fingers were not of equal length, they could readily, of course, be made longer or shorter, particularly in view of Ashwell and other art showing such construction. To increase the number of fingers, as we have mentioned, so as to increase the number of folds, would, in our opinion, furnish no serious problem to a skilled worker in the art. This is indicated by his own specification, where he said that the difference in the form of the "respec-

tive plait or gather" obtained with the two constructions is clearly seen.

Charlton (British), No. 151108, 1920, disclosed a curtain hanging tape, provided with tunnels, open at the lower ends and closed at their upper ends substantially as in Solomon. Thus, it will be seen that in the prior art, the use of such a hanger with prongs and tunnels, tape or other proper receptacles for the tines was old. Indeed, plaintiff seems to admit this fact.

Defendant pleaded also as prior art, Loudon, Patent No. 2,672,194, applied for Dec. 29, 1949, and issued March 16, 1954, covering "supporting means for curtains and the like," the fingers of which, he said, were used to maintain the heads of the curtain "in pleated formation while hanging from the rod." He too, inserted his prongs in the pockets. They were four, the same as in Solomon. He pointed out that, instead of three pleats, two might be formed, if desired, by placing only three of the fingers in pockets, the fourth positioning itself flat outside the face of the pocket, and that a single pleat might be made by the use of but two of the fingers. He added that modifications and ramifications might be made without in any way departing from the coverage of the invention. He made all his prongs of a single piece of wire, forming each one by bending the wire upon itself. To this ensemble he attached the hook. The wire was resilient, and the ends of the prongs, of course, being bent, were not sharp or pointed. This patent has been declared void by the United States Court of Appeals for the District of Columbia, in the case of Consolidated Trimming Corporation v. Loudon, 239 F.2d 33. There was a controversy, which the court determined in favor of the plaintiff, upon the question of whether Loudon is earlier than Solomon. His application was filed before that of Solomon, but the latter claims to have preceded him in date of invention. We shall discuss this feature later.

In view of this prior art, we are of the opinion that Solomon has not met the standard of patentable invention, prescribed by the Supreme Court. In Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corp., 340 U.S. 147, 152, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162, the court said: "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. * * * A patent for a combination which only unites old elements with no change in their respective functions * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly. * * * To bring these devices together and apply them to save the time of customer and checker was a good idea, but scores of progressive ideas in business are not patentable." In the concurring opinion of Justice Douglas and Black at pages 154 and 155 of 340 U.S., at page 131 of 71 S.Ct. it is said: "Patents serve a higher end— the advancement of science. An invention need not be as startling as an atomic bomb to be patentable. But it has to be of such quality and distinction that masters of the scientific field in which it falls will recognize it as an advance. Mr. Justice Bradley stated in Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S. Ct. 225, 231, 27 L.Ed. 438, the consequences of a looser standard: 'It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. * * *' "

We summed up our conclusions in this respect in National Pressure Cooker Co. v. Aluminum Goods Mfg. Co., 7 Cir., 162 F.2d 26, at page 29: "Thus there may be adduced from these decisions of the Supreme Court, old and recent, that a combination patent resulting in an improvement will not be sustained merely because the apparatus described 'may increase the convenience, extend the use, or diminish expense' (Reckendorfer), or be 'new in the sense that it had not been anticipated by any previous invention' (Hollister). Neither is it 'enough that a thing shall be new, in the sense that in its shape or form in which it is produced it shall not have been before known' (Thompson), or because it is 'more useful in the art' (Altoona), or even where the functions performed by the combination '(were) new and useful' even though the article produced is 'more efficient, useful and convenient' (Cuno)."

We think it clear from the prior art cited that Solomon merely brought together and claimed in combination a somewhat different arrangement of pleating fingers and a curtain suspending hook. Both the prongs and the hook were old in the art. Ashwell shows a similar hook with two wire fingers formed by the "U"-shape portion of the wire. Carr shows both a two-fingers and a three-fingers construction; Knight a three-fingers device, and Steiner and Loudon, four-fingers devices. In other words, we think that the prior art devices cited, irrespective of the validity of Loudon as a reference, taught Solomon everything he needed to know to build his contraption, and that he did not achieve patentable invention.

But we do not need to go so far as to say that there is complete anticipation in the prior art devices of everything that Solomon accomplished. Thus, in Dixie-Vortex Co. v. Paper Container Mfg. Co., 7 Cir., 130 F.2d 569, we said at pages 572, 573: "We need not decide whether the patent in suit is anticipated by any one of such prior art patents. It is sufficient, we think, that the prior art disclosures are such that a person skilled in the art might readily design the improvement which Barbieri claims

to have made. The improvement thus made would not, in our judgment, amount to invention, and the claims in suit are therefore invalid." We think the present case comes clearly within this rule and within the language of the Supreme Court in Hollister v. Benedict & Burnham Mfg. Co., 113 U.S. 59, at page 73, 5 S.Ct. 717, at page 724, 28 L.Ed. 901: "It is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice; and is in no sense the creative work of that inventive faculty which it is the purpose of the constitution and the patent laws to encourage and reward." See also Powder Power Tool Corp. v. Powder Actuated Tool Co., 7 Cir., 230 F.2d 409. We conclude that the district court erroneously held the patent valid.

It is urged that the findings of the court are based not only upon documentary evidence but also upon oral testimony of practical experts and patent experts, and so, must be accepted as final upon this review. However, we find it unnecessary to consider the conflicting parol testimony. It throws no light upon the documentary evidence upon which we have relied. Part of it relates the experience of practical experts with various devices, while the testimony of the patent experts presents their theories as engineers as to the meaning and intent of the documentary evidence and the construction of the patented device and that of the prior art contrivances. We rely upon the prior art references, all of which have to do with simple devices and with unambiguous words used by the various patentees. Upon that documentary evidence, we hold that the patent is anticipated, and, further, that, if we be wrong in that conclusion, the prior patents disclose a state of the art of such character that, with it before him, Solomon, as a skilled worker in the field, was taught everything that he needed to do in order to devise his contraption.

Upon the question of priority of Loudon, the court had before it the testimony of the patentee and his receipted bill for an undescribed device prior to Loudon's date. Further than that, the patentee's testimony was uncorroborated. This proof was insufficient to sustain a finding that Solomon was prior to Loudon. As the Second Circuit said, in United Shoe Machinery Corp. v. Brooklyn Wood Heel Corp., 77 F.2d 263, at page 264: "When an inventor's date is to be carried back beyond his application, courts regard the effort with great jealousy, and must be persuaded with a certainty which is seldom demanded elsewhere; quite as absolute as in a criminal case, in practice perhaps even more so. Brooks v. Sacks, 1 Cir., 81 F. 403; Dey Time Register Co. v. W. H. Bundy Recording Co., 2 Cir., 178 F. 812; Bearings Co. v. [D. P.] Harris Hardware & Mfg. Co., 2 Cir., 299 F. 782. It makes no difference how the question arises; whether the patentee is carrying back his own invention, or a supposed infringer is carrying back his; the burden is the same as the proof necessary to establish a prior use." And, as we said in Moline Plow Co. v. Rock Island Plow Co., 7 Cir., 212 F. 727, 732: "Where one seeks to carry the date of invention back of the date of an anticipating patent, he assumes the burden of proof, and must establish an earlier date, 'by evidence so cogent as to leave no reasonable doubt in the mind of the court, that the transaction occurred substantially as stated.' Deering v. [Winona] Harvester Works, 155 U.S. 286–301, 15 S.Ct. 118, 39 L.Ed. 153; Columbus Chain Co. v. Standard Chain Co., 6 Cir., 148 F. 622, 78 C.C.A. 394; [The] Barbed Wire Patent [Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed Wire Co.], 143 U.S. 275, 12 S.Ct. 443, 450, 36 L.Ed. 154; Coffin v. Ogden, 18 Wall. 120–124, 21 L.Ed. 821." The record here does not reflect the high degree of proof required by these decisions. Hence, Loudon was a valid reference. However, assuming the contrary, for the purpose of this decision, we find the other prior art of such character as to con-

stitute anticipation or at least such a status of the art as to negative invention on the part of Solomon.

Inasmuch as the patent is invalid, we do not reach the question of infringement. However, it may be well to observe that if, upon review, this patent should be held valid, we are of the further opinion that it should be held not infringed by defendant. True, the construction of defendant would seem to meet that illustrated in the drawings of Solomon; but, if validity is to be attributed to Solomon, we think that his patent must be limited by its language to the specific description of the claim. So limited, defendant's construction is not within that described by Solomon.

In view of our conclusions, we find it unnecessary to consider other points raised by the respective parties. For the reasons stated the judgment is reversed.