**HAZELTINE RESEARCH, Inc., Plaintiff,**
v.
**DAGE ELECTRIC COMPANY, Inc., Defendant.**
**No. IP 56–C–15.**

United States District Court
S. D. Indiana,
Indianapolis Division.
July 31, 1958.

---

Edward A. Ruestow, Little Neck, N. Y., and Schley, Trask & Jenkins, by Verne A. Trask, Indianapolis, Ind., for plaintiff.

Olson, Mecklenburger, von Holst, Pendleton & Neuman, Chicago, Ill., and Dutton & Kappes, by C. B. Dutton, Indianapolis, Ind., for defendant.

STECKLER, Judge.

The above entitled cause came on regularly for trial upon the plaintiff's complaint and upon the defendant's counterclaim. Plaintiff by its complaint has charged defendant with infringement of plaintiff's patent known as Salati Patent No. 2,540,012. Plaintiff has accused 78 of the defendant's devices, however for the purpose of the trial, the record was completed and closed only as to the question of validity and infringement as to two of defendant's accused devices, reserving the issue of infringement as to the remaining 76 devices for a later date, should the court find validity at this time and infringement with respect to the two devices. These two devices, connectors for coaxial cables, were identified by defendant's drawings No. A-100-056-1 (Military Type No. UG88/U) and No. A-100-130-1 (Military Type No. UG89/U).

After the introduction of small coaxial cables (cables ranging in size of one-quarter inch or less) during World War II, there was a concerted effort put forth by the Navy Department, Bureau of Ships, in connection with others, including the plaintiff herein, to bring about miniature coaxial cable connectors meet-

ing the following requirements: (1) small in size; (2) absence of reflection and voltage breakdown; (3) high frequency range; (4) ruggedness, and (5) low cost.

In support of the validity of its patent, plaintiff stresses that the solution to the problem of obtaining such a connector was like putting together a jigsaw puzzle, "a matter of finding a unique configuration of parts so as to satisfy the conflicting requirements."

At first blush, the issues in the case appeared to be highly technical and complicated. However, after having the benefit of the expert manner in which counsel submitted the evidence, the issues resolve themselves down to relatively few questions of fact.

The connectors here in issue are for the purpose of making a quick connection in coaxial transmission lines, or what is more commonly referred to as coaxial cables. Coaxial cables are used to transmit or translate high frequency electric waves from a source of power to an outlet, such as an antenna. A coaxial cable involves an inner wire (conductor) surrounded by a tubular outer wire. The terms "high frequency" and "waves" mean that the electric current "vibrates," so to speak, at a very rapid frequency, often as high as 10 billion times per second. High frequency electrical waves are quite similar to light waves in that they may be reflected or propagated much like the light waves from a search light. Through the use of coaxial cables, such waves may be propagated along the cable in a straight line or around curves.

One of the problems encountered in the use of coaxial cables is partial reflection due to an obstruction in the coaxial cable which interferes with a smooth flow of the waves. Counsel and the expert witnesses likened such reflections to reflections in a window glass which tend to reflect back a part of the light rays. Such reflections in coaxial cables can be the source of considerable difficulty in electronic devices employing coaxial cable.

Coaxial cables have what is known as a "characteristic impedance." It was well known in the art prior to the alleged invention that in order to avoid reflections in the flow of high frequency waves through a coaxial cable, it is necessary to avoid abrupt changes in the characteristic impedance along the route of the cable. Likewise, it is necessary to avoid voltage breakdown, or what is more commonly called "short circuit," and this is ordinarily accomplished by a dielectric, either air or plastic, such as polyethylene, separating the wires. In order to maintain a constant characteristic impedance in the coaxial cable, it is necessary to maintain a balance in the ratio between the inner surface of the outer conductor and the outer surface of the inner conductor. As the high frequency waves travel along a coaxial cable, magnetic and electric fields are set up in the dielectric, that is, in the space between the inner surface of the outer conductor and the outer surface of the inner conductor. Dr. Hazeltine, one of the experts at the trial, reiterated the long accepted scientific fact that the strength of the magnetic field is proportional to the current of the wave and to a "constant," called "inductance," which depends solely on the ratio of the outer to the inner diameter of the dielectric, being greater for higher ratios. That the strength of the electric field is proportional to the voltage and to a constant, called "capacitance" (or capacity), which also depends on the ratio of the outer to the inner diameter of the dielectric, but is less for higher ratios; also that the capacitance is proportional to a constant of the dielectric material called the "dielectric constant." It is through a sudden change in the outer or inner diameter of the dielectric that additional capacitance is brought about, this being called "discontinuity capacitance."

The expert went on to explain that the ratio of voltage to current in a single wave at any point along the line is called the characteristic impedance (or simply the impedance) of the line at that point. This characteristic impedance is equal to the square root of the ratio of the inductance to capacitance and so depends on the ratio of the outer to the inner diameter of the dielectric (being greater for high ratios) and on the dielectric constant. It was also pointed out that a coaxial connector is a form of transmission line. The connector may have a continuous constant impedance which is the same for any portion, however short, along its length; or it may have an overall constant impedance where the impedances for short portions deviate but have an overall or effective value equal to that of the cable with which the connector is to be used. It is within this area of electronic science that Salati claims to have conceived his invention.

In its brief, plaintiff in making reference to certain language contained in the Salati patent dealing with a general reference to the usefulness of coaxial transmission lines, quoted the following therefrom:

"It is well known that reflections of wave-signal energy occur at any point along a wave-signal propagation path where an abrupt change of impedance occurs and that such reflected energy produces standing waves of wave-signal voltage and current along the propagation path. Thus, reflections of wave-signal energy are produced at the junction of a coaxial transmission line and its electrical connector whenever the characteristic impedance of the connector is not the same as that of the transmission line. Such standing waves are undesirable in many applications for numerous well known reasons."

In dealing with the prior art that Salati claims to have advanced through his invention, he goes on to say:

"To minimize reflections of wave-signal energy, electrical connectors for use on coaxial transmission lines are conventionally of coaxial construction and it is usual so to select the parameters of the connector that *each incremental length of the latter*

*has a characteristic impedance equal to that of the transmission line.* Relatively little difficulty is experienced in the design and construction of such connectors where they are to be used with a coaxial transmission line of relatively large physical size since the inner and outer conductors of the line are then sufficiently large that the inner and outer conductors of the connector may readily be constructed of approximately the same diameters while yet possessing adequate rigidity and mechanical strength. In those instances where it is desired or necessary that the inner and outer conductors of the electrical connector have diameters larger than the corresponding conductors of the transmission line, it is conventional so to taper the conductors of the connector at the end or ends thereof adjacent the transmission line that the desired characteristic impedance of the connector is maintained *through each incremental length thereof."*

Plaintiff points out that Salati was thus saying that the prior art connectors were of the continuous constant impedance type in which the impedance is the same for any portion, however short, along the connector length. By following this teaching, Salati in his patent states that in the construction of the miniature connectors, such as those with which we are here concerned, the electric connectors for use with such small transmission lines cannot readily be constructed to have their inner and outer conductors of approximately the same diameters as corresponding conductors of the line since the inner conductor of the connector then becomes so small that it not only does not possess the required rigidity and mechanical strength but can be connected to the inner conductor of the transmission line only with great difficulty. Also that by following such teachings it is difficult to maintain mechanical tolerances between the conductors so as to maintain the required uniform characteristic

impedance throughout the connector; that this type of construction is relatively expensive, not well suited for mass production, and usually results in a connector of larger physical size than is desirable for many applications. Plaintiff claims Salati overcame these obstacles by abandoning the "misconception" that impedance had to be constant for every incremental length, and by providing "discrete sections of impedance" respectively higher and lower than the line impedance.

To state in a more formalized manner Salati's alleged concept in this connection, the court quotes from the specifications of the patent, commencing at Line 1, Column 3:

"In accordance with a particular form of the invention, an electrical connector for an end of a coaxial transmission line of given characteristic impedance comprises an inner conductor for electrical connection to the inner conductor of the line to form with the end thereof a continuously linear conductive circuit and having a diameter appreciably larger than that of the inner conductor of the line and sufficiently large as to provide a relatively rigid member. The connector includes an outer conductive shell for electrical connection to the outer conductor of the line to provide, with the inner connector conductor and with an end portion of the inner conductor of the line, a coaxial transmission line. *The last-mentioned coaxial transmission line includes at least one line portion so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value larger than the aforesaid given characteristic impedance. The last-mentioned coaxial transmission line also includes at least one other line portion so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value*

*smaller than the aforesaid given characteristic impedance. The length of each of the aforesaid line portions is so proportioned with relation to the characteristic impedance thereof as to maintain approximate equality between the ratio of the total effective inductance of the connector to the total effective capacitance thereof and the ratio of inductance to capacitance of an incremental length of the transmission line."* (The Court's emphasis.)

Thus it is apparent that if the Salati patent is valid, it lies in his idea of getting away from the concept that in order to have a continuous constant impedance in the coaxial cable and the connector, it is necessary to maintain a constant impedance in each incremental length of the connector. Salati says in effect that so long as the characteristic impendance of the cable is matched, or equaled, throughout the overall length of the combined halves of the connector, the same result will obtain. According to the plaintiff, only through Salati's alleged concept was it possible to put together the pieces of the jigsaw puzzle representing the problem posed in a miniature connector. In other words, it is contended that through his advancement of the prior art, it was possible to vary the configuration of the components of the connector so as to make it possible to manu-facture miniature connectors meeting the stipulated requirements.

After analyzing the file wrapper and all of the proceedings reflected therein which were had in the Patent Office, after reviewing all of the other evidence in this record and carefully considering the factual and legal arguments of counsel as set forth in their briefs, the court concludes as to the validity of the patent that the law and the facts are with the defendant and against the plaintiff. The court further concludes that had it found the patent to be valid, the defendant's two accused devices heretofore identified would infringe by reason of the breadth of the patent claims.

Accordingly the court adopts a part of the defendant's proposed findings of fact and conclusions of law, rejecting or modifying the remainder thereof as follows:

### Findings of Fact

1. Plaintiff, Hazeltine Research, Inc., is a corporation organized and existing under the laws of the State of Illinois. Defendant, Dage Electric Company, Inc., is a corporation organized and existing under the laws of the State of Indiana and has its principal place of business within the Southern District of Indiana, Indianapolis Division.

2. This is an action for damages and an injunction against defendant for alleged infringement of United States Patent No. 2,540,012, of which plaintiff is the owner, issued January 30, 1951, on an application of Octavio M. Salati, filed May 19, 1945.

3. Defendant has counterclaimed for a declaration that United States Patent No. 2,540,012 is void and invalid, and not infringed by defendant. While defendant also asserted a counterclaim for dismissal of the complaint based upon lack of jurisdiction in this court under Title 28 U.S.C. § 1498 relating to sales to the United States government, defendant at the trial waived this claim as the result of a stipulation between the parties, dated January 9, 1958.

4. Defendant's accused structures are in number and are accurately shown in sectional assembly drawings, Annex B, forming a part of a Stipulation dated January 9, 1958. While defendant has introduced testimony and evidence with regard to all accused connectors, plaintiff has introduced limited evidence as to all but two connectors. For the purposes of the trial, the record was complete and closed, only as to the question of validity and the question of infringement by accused connectors UG 88/U and UG 89/U, which are accurately illustrated in defendant's drawings A-100-056-1 and A-100-130-1. No further

evidence will be received as to the remaining 76 accused devices as the record disposes of all issues to be tried by this court.

5. Plaintiff's patent relates to the general art of electrical connectors for coaxial transmission lines or cables and more particularly to connectors for small cables comprising a rigid central conductive pin or rod supported by dielectric material within an enlarged conductive outer shell. These three structural elements or parts are the only ones recited in any claim of the patent and they are the necessary and essential parts of every connector.

6. Coaxial cables and connectors therefor are old and well known, dating back prior to 1930. The transmission and treatment of microwaves was well understood prior to 1900.

A. As early as 1924 the textbooks included sections teaching the design of coaxial transmission lines including determination of capacitance, C, inductance, L, and characteristic impedance $Z_o$ from the ratio of the conductor diameters D/d and the dielectric constant, K. This teaching was utilized in the design of cables, connectors or other associated appurtenances.

B. The attainment of high voltage operation by providing long surface paths between the inner and outer conductors was also well known as early as 1930, and tables, charts and formulas of voltage breakdown through air were available.

C. During 1944 two articles (Defendant's Exhibit 26) by Whinnery et al. appeared in the Proceedings of the Institute of Radio Engineers teaching the importance of and design compensation for discontinuity capacitances which are the important reflective effects produced at each radial wall or step within a coaxial cable or connector.

7. Coaxial connectors using an enlarged conductive rigid central pin or rod, a solid dielectric material surrounding the rod, and an enlarged stepped outer conductive shell surrounding the solid dielectric wherein the parts were in two separable pieces and the dielectric was shaped to provide long voltage breakdown paths, were known at least as early as 1930. At that time the selection of diameter ratios and a dielectric constant to produce a desired characteristic impedance within the connector was textbook knowledge.

8. The designer of connectors for coaxial cables had many known choices available in 1943, including the use of solid dielectric material or spaced supporting beads, the use of separable connector halves held together by threaded connections, bayonet joints or friction, the use of overlapping dielectric in the connector halves, and between the cable and connector, and any desired degree of perfection in impedance matching either by mathematical design, or empirical cut-and-try changes, or a combination of both, to determine the various diameter ratios within the connector. In 1943 the British introduced a new $\frac{1}{4}$ inch 50 ohm coaxial cable and immediately many connector designs were forthcoming for use therewith. To avoid the problems of a multiplicity of designs, the Navy Department, in the summer of 1944, called the designers together to standardize on a single standard design acceptable to all.

9. The Salati patent shows and describes in general terms one coaxial connector which followed the introduction of this small cable, although the patent is silent as to the size, type, or characteristic impedance of cable with which it is to be used and provides no information from which this might be determined. A single physical embodiment is illustrated in the figures of the drawing, the figures differing only in the amount of detail which is included. The plaintiff selected Fig. 2 of the patent as it included two connector halves but eliminated unnecessary detail of cable clamps and the like.

A. The connector illustrated in the Salati patent comprises cooperating conductive outer shell portions 14 and 14a, which engage the outer cable conductor,

cooperating inner rigid conductive rod portions 10′ and 10′a, and cooperating dielectric sleeves 23 and 23a which interleave and overlap the cable dielectric.

B. As filed, the patent stated that the central connector section $l_1$ provided a compensating capacitance for the excess inductance of the end section, $l$. The application as filed refers to the connector section $l_2$ as having no excess inductance or capacitance but rather as having the characteristic impedance $Z_0$ of an associated cable. The application further stated that the section $l_2$ could be of any arbitrary length. The application does not mention or infer the existence of the important discontinuity capacitances which result from each step in either the inner or outer conductor of the connector.

10. In December 1946 the Salati application was extensively amended and rewritten. The existing drawing was changed, a new figure, 2a, was added, major portions of the original specification were cancelled, and major portions of the ultimate patent added. The amended application, for the first time, described the section $l_2$ as a contributor of excess capacitance and as being of critical length and described the central section $l_1$ as possessing no excess capacitance and being of arbitrary length. However the application remains silent as to the presence or significance of discontinuity capacitance.

11. Plaintiff relies on all of the claims of the patent, which read as follows:

"1. An electrical connector for an end of a coaxial transmission line of given characteristic impedance comprising, an inner conductor for electrical connection to the inner conductor of said line to form with the end thereof a continuously linear conductive circuit and having a diameter appreciably larger than that of the inner conductor of said line and sufficiently large as to provide a relatively rigid member, and an outer conductive shell for electrical connection to the outer conductor of said line to provide with said inner connector conductor and with an end portion of the inner conductor of said line a coaxial transmission line, said last mentioned coaxial transmission line including at least one line portion so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value larger than said given characteristic impedance, and said last-mentioned coaxial transmission line also including at least one other line portion so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value smaller than said given characteristic impedance, the length of each of said line portions being so proportioned with relation to the characteristic impedance thereof as to maintain approximate equality between the ratio of the total effective inductance of said connector to the total effective capacitance thereof and the ratio of the inductance to capacitance of an incremental length of said first-mentioned transmission line.

"2. An electrical connector for an end of a coaxial transmission line of given characteristic impedance comprising, an inner conductor for electrical connection to the inner conductor of said line to form with the end thereof a continuously linear conductive circuit and having a diameter comparable to the inner diameter of the outer conductor of said line to provide a relatively rigid conductor member, and an outer conductive shell for electrical connection to the outer conductor of said line to provide with said inner connector conductor and with an end portion of the inner conductor of said line a coaxial transmission line, said last-mentioned coaxial transmission line including at least one line portion so proportioned as to have a characteristic impedance which is substan-

tially uniform along the length thereof and which has a value larger than said given characteristic impedance, and said last-mentioned coaxial transmission line also including at least one other line portion so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value smaller than said given characteristic impedance, the length of each of said line portions being so proportioned with relation to the characteristic impedance thereof as to maintain approximate equality between the ratio of the total effective inductance of said connector to the total effective capacitance thereof and the ratio of the inductance to capacitance of an incremental length of said first-mentioned transmission line.

"3. An electrical connector for an end of a coaxial transmission line of given characteristic impedance comprising an inner conductor for electrical connection to the inner conductor of said line to form with the end thereof a continuously linear conductive circuit and having a diameter appreciably larger than that of the inner conductor of said line and sufficiently large as to provide a relatively rigid member, and an outer conductive shell for electrical connection to the outer conductor of said line to provide with said inner connector conductor and with an end portion of the inner conductor of said line a coaxial transmission line, said last-mentioned coaxial transmission line including at least one end portion adjacent said first-mentioned line and so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value sufficiently larger than said given characteristic impedance as to insure freedom from voltage breakdown of said connector because of the large diameter of its said inner

conductor, and said last-mentioned coaxial transmission line also including at least one central portion so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value smaller than said given characteristic impedance, the length of each of said line portions being so proportioned with relation to the characteristic impedance thereof as to maintain approximate equality between the ratio of the total effective inductance of said connector to the total effective capacitance thereof and the ratio of the inductance to capacitance of an incremental length of said first-mentioned transmission line.

"4. An electrical connector for an end of a coaxial transmission line of given characteristic impedance comprising, an inner conductor for electrical connection to the inner conductor of said line to form with the end thereof a continuously linear conductive circuit and having a diameter appreciably larger than that of the inner conductor of said line and sufficiently large as to provide a relatively rigid member, and an outer conductive shell for electrical connection to the outer conductor of said line to provide with said inner connector conductor and with an end portion of the inner conductor of said line a coaxial transmission line, said last-mentioned coaxial transmission line including at least one line portion so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value larger than said given characteristic impedance and said last-mentioned coaxial transmission line also including at least one other line portion so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value smaller than said

given characteristic impedance, the length of each of said line portions being so proportioned with relation to the characteristic impedance thereof as to maintain approximate equality between the ratio of the total effective inductance of said connector to the total effective capacitance thereof and the ratio of the inductance to capacitance of an incremental length of said first-mentioned transmission line, and the effective electrical length in wave lengths of said connector being inappreciable in relation to the wave length of a wave signal to be translated by said first-mentioned transmission line.

"5. An electrical connector for an end of a coaxial transmission line of given characteristic impedance comprising an inner conductor for said connector adapted to be coupled to the inner conductor of said line and having a diameter appreciably larger than that of the inner conductor of said line and sufficiently large as to provide a relatively rigid member, an outer conductive shell for said connector adapted to be coupled to the outer conductor of said line to provide with said inner connector conductor and with an end portion of the inner conductor of said line a coaxial transmission line having at least one line portion of characteristic impedance larger than said given characteristic impedance and at least one other line portion of characteristic impedance sufficiently smaller than said given characteristic impedance as to maintain approximate equality between the ratio of the total inductance of said connector to the total capacitance thereof and the ratio of the inductance to capacitance of an incremental length of said first-mentioned transmission line, and an insulating sleeve for maintaining said inner connector conductor in coaxial relation with said conductive shell, said sleeve having such end configurations that one end thereof fits closely over and may be cemented to the insulation of said first-mentioned transmission line to minimize paths extending through air over the surface of said one end between said inner connector conductor and said shell while the other end of said sleeve provides only surface paths between said inner connector conductor and said shell long in relation to the radial spacing therebetween.

"6. An electrical connector for an end of a coaxial transmission line of given characteristic impedance comprising, an inner conductor for said connector adapted to be coupled to the inner conductor of said line and having a diameter appreciably larger than that of the inner conductor of said line and sufficiently large as to provide a relatively rigid member, and an outer conductive shell for said connector adapted to be coupled to the outer conductor of said line to provide with said inner connector conductor and with an end portion of the inner conductor of said line a coaxial transmission line, said shell having a stepped concentric bore with a first step thereof of relatively small diameter and cooperating with said end portion of the inner conductor of said first-mentioned transmission line to provide a transmission-line portion for said connector having a characteristic impedance greater than said given characteristic impedance and the remainder of said bore including another step of larger diameter and cooperating with said inner connector conductor to provide a transmission-line portion for said connector having a characteristic impedance sufficiently smaller than said given characteristic impedance as to maintain approximate equality between the ratio of the total inductance of said connector to the total capacitance thereof and the ratio of the inductance to capacitance of an incre-

mental length of said first-mentioned transmission line.

"7. An electrical connector, for a coaxial transmission line having a given characteristic impedance, comprising: an inner connector conductor for electrical connection to the inner conductor of said line in spaced relation to the end of the outer conductor of said line to form with the end of said inner conductor of said line a continuously linear conductive circuit and having an outer diameter approximating the inner diameter of said outer conductor; a conductive shell for electrical connection to said outer conductor and extending therefrom to surround said connector inner conductor to form with said inner conductors a coaxial transmission line having opposing conductive surfaces primarily of cylindrical configuration and providing along said connector at least a pair of line sections each of which has a uniform value of impedance along its length; and dielectric material filling the space between said shell and said inner conductors; at least one of said pair of line sections being so proportioned with relation to a parameter thereof and the dielectric constant of said material as to have a characteristic impedance larger than said given characteristic impedance; at least the other of said pair of line sections being so proportioned with relation to a parameter thereof and said dielectric constant as to have a characteristic impedance smaller than said given characteristic impedance; and the length of at least each of said pair of line sections being so proportioned with relation to the characteristic impedance thereof as to provide for said connector with said given characteristic impedance as the terminating impedance at one end thereof an input impedance at the other end thereof approximately equal to said given characteristic impedance.

"8. An electrical connector, for a coaxial transmission line having a given characteristic impedance, comprising: an inner connector conductor for electrical connection to the inner conductor of said line in spaced relation to the end of the outer conductor of said line and having an outer diameter approximating the inner diameter of said outer conductor; a conductive shell for electrical connection to said outer conductor and extending therefrom to surround said connector inner conductor to form with said inner conductors a coaxial transmission line having opposing conductive surfaces primarily of cylindrical configuration; said shell having a stepped internal bore providing along said connector at least a pair of line sections each one of which has a uniform value of impedance along its length to reduce the effect of impedance discontinuities in said connector caused by the enlarged size of said connector inner conductor; and dielectric material filling the space between said shell and said inner conductors; at least one of said pair of line sections being so proportioned with relation to a parameter thereof and the dielectric constant of said material as to have a characteristic impedance larger than said given characteristic impedance; at least the other of said pair of line sections being so proportioned with relation to a parameter thereof and said dielectric constant as to have a characteristic impedance smaller than said given characteristic impedance; and the length of at least each of said pair of line sections being so proportioned with relation to the characteristic impedance thereof as to provide for said connector with said given characteristic impedance as the terminating impedance at one end thereof an input impedance at the other end thereof approximately

equal to said given characteristic impedance.

"9. An electrical connector for a dielectric-filled coaxial transmission line having a given characteristic impedance comprising: an inner connector conductor adapted to be connected to the inner conductor of said line in abutting relation to the dielectric thereof but spaced from the end of the outer conductor of said line; a conductive shell adapted to be connected to said outer conductor and extending therefrom to surround said connector inner conductor to form with said inner conductors a coaxial transmission line having opposing conductive surfaces primarily of cylindrical configuration; and dielectric material filling the space between said shell and said connector inner conductor and adapted to extend over a length of the dielectric material of said first-mentioned transmission line to improve the voltage-breakdown characteristic of said connector; the parameters of said shell and said inner conductors being proportioned with relation to the dielectric constant of said material to approximate the characteristic impedance of said first-mentioned transmission line.

"10. A detachable electrical connector for a coaxial transmission line having a given characteristic impedance comprising: an inner connector conductor having coaxially aligned detachable portions at least one of which is adapted to be connected to the inner conductor of said coaxial transmission line in spaced relation to the end of the outer conductor of said line; a conductive shell surrounding said connector inner conductor to form therewith a coaxial transmission line having opposing conductive surfaces primarily of cylindrical configuration, said shell having coaxially aligned detachable portions of which the one

thereof corresponding to said one inner-conductor portion is adapted to be connected to the outer conductor of said first-mentioned transmission line; and dielectric material filling the space between said shell and said connector inner conductor but having two detachable coaxially aligned portions individual to corresponding ones of said inner-conductor and shell portions and with telescopically interengaging end sections effective to increase the voltage-breakdown characteristic of said connector; the parameters of said shell and said inner conductors being proportioned with relation to the dielectric constant of said material to approximate the characteristic impedance of said first-mentioned transmission line.

"11. A coaxial electrical connector, having a desired characteristic impedance, comprising: an outer linear conductive shell and a coaxially supported linear inner conductor providing disconnectable terminals at a common end thereof, the opposing conductive surfaces of said shell and conductor being primarily of cylindrical configuration and at least one thereof being of stepped diameter to provide through said connector at least a pair of line sections each one of which has a uniform value of impedance along its length; at least one of said pair of line sections being so proportioned as to have a characteristic impedance larger than said desired characteristic impedance; at least the other of said pair of line sections being so proportioned as to have a characteristic impedance smaller than said desired characteristic impedance; and the length of at least each of said pair of line sections being so proportioned with relation to the characteristic impedance thereof as to provide for said connector a ratio of total effective inductance to total effective capaci-

tance corresponding to said desired characteristic impedance.

"12. An electrical connector for translating wave signals in a predetermined frequency range and adapted for connection to an end of a coaxial transmission line of given characteristic impedance comprising: an inner conductor for electrical connection to the inner conductor of said line to form with the end thereof a continuously linear conductive circuit and having a diameter appreciably larger than that of the inner conductor of said line and sufficiently large as to provide a relatively rigid member; and an outer conductive shell for electrical connection to the outer conductor of said line to provide with said inner connector conductor and with an end portion of the inner conductor of said line a coaxial transmission line; said last-mentioned coaxial transmission line including at least one line portion having a length inappreciable with relation to each of the wave lengths of said wave signals and so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value substantially larger than said given characteristic impedance; and said last-mentioned coaxial transmission line also including at least one other line portion having a length inappreciable with relation to said each wave length and so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value smaller than said given characteristic impedance; the length of each of said line portions being so proportioned with relation to the characteristic impedance thereof as to maintain approximate equality between the ratio of the total effective inductance of said connector to the total effective capacitance thereof and the ratio of the inductance to

capacitance of an incremental length of said transmission line.

"13. An electrical connector for translating wave signals in a predetermined frequency range and for electrically connecting a coaxial transmission line having a given characteristic impedance to an electrical device having a given input impedance comprising: an inner conductor for electrical connection to the inner conductor of said line to form with the end thereof a continuously linear conductive circuit and having a diameter appreciably larger than that of the inner conductor of said line and sufficiently large as to provide a relatively rigid member; an outer conductive shell for electrical connection to the outer conductor of said line to provide with said inner connector conductor and with an end portion of the inner conductor of said line a coaxial transmission line; said last-mentioned coaxial transmission line including at least one line portion having a length inappreciable with relation to each of the wave lengths of said wave signals and so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value substantially larger than said given characteristic impedance; said last-mentioned coaxial transmission line also including at least one other line portion having a length inappreciable with relation to said each wave length and so proportioned as to have a characteristic impedance which is substantially uniform along the length thereof and which has a value smaller than said given characteristic impedance; the length of each of said line portions being so proportioned with relation to the characteristic impedance thereof as to provide for said connector with said given characteristic impedance as the terminating impedance at one end thereof an input impedance at

the other end thereof approximately equal to said given input impedance."

12. The accused devices UG 88/U and UG 89/U consist of a central rigid conductive rod, an outer enlarged conductive shell, and an intermediate dielectric sleeve. The connector is made in two detachable parts and held together with a bayonet joint. The dielectric portions interleave and overlap the cable dielectric. The connector is intended for use with a 50 ohm coaxial cable and is reasonably matched at frequencies up to 1000 megacycles. It may be satisfactory for some uses up to 3000 megacycles. There is an inductive portion of the connector where the connector dielectric overlaps the cable, discontinuity capacitances resulting from the steps in the inner and outer conductors, and excess capacitance in the small adjacent connector section. All of these factors are approximately equal and small, constituting a small percentage of the total inductance and total capacitance of the connector. Only the latter two quantities determine the characteristic impedance of the connector. The design is such that it would be totally unsatisfactory and would not work out if the discontinuity capacitance were ignored in computing the characteristic impedance.

13. The accused devices UG 88/U and UG 89/U are based upon a prototype developed by the Bell Telephone Laboratories and are part of a group generally known as the type BNC, which stand for Baby Neil Constant because they were originally designed as a small connector by Paul Neil of the Bell Telephone Laboratories and because they approached more closely a constant impedance device when used with 50 ohm cable at higher frequencies than the prior type BN connector. The differences are differences in degree and not basic differences in theory or design. The United States Government assigned the designations BNC, UG 88/U and UG 89/U to the Bell Laboratory connector in April, 1944, based on Bell Laboratory drawing ESL 662916, dated March 2, 1944 and the final Navy drawing of the connector is drawing RE 49F 246, dated December 2, 1944.

14. B. The Salati application was extensively amended on December 3 and 4, 1946, more than a year after the completion of the Navy drawing RE 49 F 246 in accordance with which the accused UG 88/U and UG 89/U connectors were manufactured. The drawings and description of the pending patent application were amended to describe in general, functional terms the sections within the connector as being much the same as the UG 88/U and UG 89/U, but no discussion was added concerning the critical effects of the discontinuity capacitances.

15. Defendant set up in its answer or gave the required notice, and introduced at the trial, the following patent references, publications and instances of prior knowledge:

| Patent No. | Patentee | Issue Date | Filing Date |
| --- | --- | --- | --- |
| 1,841,473 | Green | Jan. 19, 1932 | Jan. 30, 1930 |
| 1,871,397 | Watts | Aug. 9, 1932 | Jul. 29, 1929 |
| 2,125,597 | White et al. | Aug. 2, 1938 | Apr. 11, 1935 |
| 2,127,408 | Kaar | Aug. 16, 1938 | Sept. 13, 1935 |
| 2,267,371 | Buschbeck | Dec. 23, 1941 | Mar. 12, 1938 |
| 2,406,945 | Fell | Sept. 3, 1946 | Feb. 16, 1943 |
| 2,490,622 | Cork | Dec. 6, 1949 | May 15, 1943 |
| 2,529,436 | Weber et al. | Nov. 7, 1950 | June 14, 1944 |
| 2,615,953 | Waite, Jr. | Oct. 28, 1952 | Mar. 16, 1943 |

The following references were cited by the Patent Office in the file wrapper of Salati patent No. 2,540,012:

| Patent No. | Patentee | Date |
|---|---|---|
| 2,152,504 | Scott et al. | Mar. 28, 1939 |
| 2,173,643 | Moser | Sept. 19, 1939 |
| 2,372,429 | Jones | Mar. 27, 1945 |
| 2,376,725 | Richardson et al. | May 22, 1945 |
| 2,424,545 | Bard | July 29, 1947 |
| 2,427,752 | Strempel et al. | Sept. 23, 1947 |

Publications:

"Equivalent Circuits for Discontinuities in Transmission Lines," Proceedings of the Institute of Radio Engineers, Vol. 32, No. 2, February, 1944, Whinnery and Jamieson

"Coaxial Lines Discontinuities," Proceedings of the Institute of Radio Engineers, Vol. 32, No. 11, November, 1944, Whinnery, Jamieson and Robbins.

Prior Knowledge:

Type BN connectors UG 85/U, UG 86/U, UG 114/U and UG 115/U known to Edwin A. Mroz, the coordinator of coaxial cables and connectors with the United States Navy Department since about 1941, and others, as early as March, 1943.

Type HN connectors UG 59/U and UG 60/U known to Edwin A. Mroz and others as early as November, 1943.

Bell Laboratories connectors, prototype BNC, UG 88/U and UG 89/U known to Edwin A. Mroz, C. B. Sheppard, O. M. Salati and others, some as early as March 1944.

16. The BN connector was conceived as early as March, 1943 and actually constructed and used at least as early as April 20, 1944; was not thereafter abandoned. The connector is still commercially used and sold.

The HN connector was conceived, actually constructed and used at least as early as November 1943 and was not thereafter abandoned. The connector is still commercially used and sold. ·

The Bell Laboratory BNC, UG 88/U and UG 89/U was conceived prior to March 2, 1944 and was actually constructed, tested, used and known to Salati and others prior to August, 1944. The identical connector apparently never went into commercial use although the type is still commercially used and sold in modified form.

17. The prior art shows every structural element of the Salati patent to be old both individually and in the claimed combinations.

A. All coaxial devices, cables, connectors and the like include an inner conductor, an outer conductor and some dielectric material holding them in spaced coaxial relationship. This is true of all of the patent references and all of the instances of prior knowledge.

B. In all coaxial connectors, the outer shell is enlarged to a size greater than the associated cable, the inner conductor is rigid and larger than the inner conductor of an associated cable, and the inner and outer conductor are held in spaced relationship by a dielectric sleeve.

C. All of this is shown in connectors in the patents to Watts, Buschbeck, Cork, Weber et al. and Waite as well as the three instances of prior knowledge: The HN, BN, and Bell BNC connector.

D. The use of coaxial conductive elements having stepped diameter ratios producing sections of high and low impedance designed to produce some average impedance was old in at least the patents to Green, White et al., Buschbeck, Kaar, Fell, Cork, Weber et al. and Waite.

This feature was also old in the BN, HN, and Bell BNC connectors. The patent to Watts includes a stepped construction, and the patent to Buschbeck and one embodiment of the patent to Cork explain the attainment of an average impedance by balancing inductive and capacitive sections through selection of the size and shape of the dielectric material within the connector.

E. The use of long surface paths along a solid dielectric between the inner and outer conductor of a coaxial cable, either at the cable juncture or at the juncture of the two connector halves, or both, is shown to be old in the Watts and the Waite patents and in each of the three instances of prior knowledge, namely the BN, HN and Bell BNC connectors.

F. The complete combination of even the narrowest and most detailed claims of the patent is completely shown in the patent to Waite and in the BN, HN, and Bell BNC connectors.

G. Not only is the structure of the Salati patent anticipated by the prior art, but the theory of design is fully documented with mathematical precision in many of the references.

18. Every element entering into the alleged combination of each of the 13 claims of the patent in suit was old and served no different purpose in the combination than it served separately.

The precise combination of each of the 13 claims was also old.

19. A. The Patent Office failed to find any reference showing the use of overlapping dielectrics or long surface paths for high voltage characteristics.

B. The Patent Office also failed to find a reference relating to connectors in which the balancing or averaging out of adjacent sections of high and low impedance was described in any detail.

C. Although the cited patent to Moser was specifically directed to a matched connector in which such high and low sections were manifestly present, the Moser patent did not specifically explain how the balancing or averaging of the sections occurred.

D. The Patent Office failed to find the most pertinent prior art.

20. There is no new, unusual, or unexpected result produced by the combination set out in any of the 13 claims of the Salati patent. The claims are broadly directed to a coaxial connector. Even the narrowest and most limited claims do not mention the size of the connector, and the specification fails to mention the size or give an example of what would constitute a small connector. Only claim 9 mentions that the associated cable is dielectric filled, only claim 10 mentions that the connector is made of two detachable halves, only claims 5, 9 and 10 include any structure which could in any manner influence the voltage breakdown conditions, only claim 9 recites an abutting relationship between the connector rod and the cable insulation, only claims 6, 8 and 11 mention the stepped outer conductive shell. Claims 9 and 10 do not mention balanced sections of high and low impedance. Prof. Hazeltine compared the prior art with his own prepared statement of the claimed invention. However, even if a new composite claim were assembled from all of the various recitations scattered through the 13 patent claims many of the elements of Prof. Hazeltine's statement would be lacking.

If there is any reduced size, improved operation, reduced cost, or improved ruggedness in the accused connectors as discussed extensively by plaintiff's witnesses, these result not from any feature set forth in the Salati claims or specification, but from the logical choices of components, materials, dimensions and parts relationships by others than Salati, all of these choices being well known in the prior art and available to the skilled mechanic.

21. The claims of the Salati patent must stand or fall upon the recitation that two line portions within the connector are "so proportioned" as to have a uniform high impedance and a uniform low impedance respectively, and that the lengths of these portions are "so proportioned with relation to the character-

istic impedance thereof" as to maintain "approximate equality" between the inductance-capacitance ratio, L/C, of the connector and the inductance-capacitance ratio, L/C, of the line.

A. The statement "so proportioned that" requires three separate proportionings of dimensions and materials within the connector. This language is vague, functional and indefinite.

B. The specification does not utilize terms which are any more definite and does not in any manner advise the public of the nature of the proportionings or of the meaning of the term "approximate equality." Impedance matching is merely a matter of degree, the closer the match of a connector, the wider the range of operation. All of the connectors described at the trial had their sections so proportioned that they were satisfactorily matched for use in their designated frequency range. There is no description in the Salati patent which would distinguish from these or set forth a structure inherently distinguishable from the prior art.

C. The Salati patent does not set forth the best mode of carrying out the invention.

22. An important and necessary element of the connector shown in the Salati patent is wholly ignored in the patent description. To produce a useful connector which includes steps in the inside or outside conductors, the discontinuity capacitance of those steps must be taken into account. The discontinuity capacitance may be likened to the effect of water waves reflected from a straight wall. If it is not taken into account, the design will not work out. The determination of discontinuity capacitance was little understood, the first quantitative determination of its magnitude having been taught by Whinnery et al. in February 1944. The Salati patent is wholly silent as to the existence of discontinuity capacitances, the method of determination or the inclusion of that factor in an over-all design. Thus an essential factor in the patented structure is not described in the patent specification or claims.

23. Sales of BNC, improved BNC, and C type connectors and perhaps others by plaintiff's licensees, by the defendant, and by others cannot be construed as evidence that these connectors used any patent teaching or that the patent teaching satisfied any long-felt need, or replaced any competitive connectors, or stimulated any public demand.

The United States Government standardizes certain connectors for all uses to avoid the introduction of many confusing designs. To do otherwise would create chaos, just as the use of a different gun bore or ammunition size by each manufacturer would be intolerable. The plaintiff's design was contemporaneous with others when the new ¼ inch coaxial cable was introduced and any growth of sales is explained by government standardization and the growing use of the ¼ inch cable.

Plaintiff's only evidence of commercial success was the testimony of L. B. Dodds, plaintiff's president, with regard to the approximate royalties which it collects. Plaintiff's licensees do not report the number or type of connectors which they make or the basis on which payments are made; other patents beside the Salati patent are included in the licenses. Commercial success of the patented product therefore, is not established to the extent that such factor is of any material aid to the court in determining the validity of the patent.

24. The facts that the two connectors which plaintiff chose from the 78 accused devices are manufactured in accordance with a Navy standard drawing RE 49 F 246, dated December 2, 1944 and are substantially identical to it, and that plaintiff's patent, filed in the Patent Office on May 19, 1945, also includes a drawing similar to the prior Navy drawing are not surprising.

25. Plaintiff has not reasonably established any date of conception or reduction to practice by Salati of the structure of the Salati patent and thus the

effective date of the alleged Salati invention must be May 19, 1945, the patent filing date. The only evidence offered was the uncorroborated testimony of the inventor himself. The plaintiff offered a document bearing the date of May 3, 1943 (Plaintiff's Exhibit 22), but this was an unbound sheet, glued into a laboratory notebook and bearing witnesses' names added more than a year following the alleged date of writing. The sheet did not mention characteristic impedance, was sketchy and not a sufficient disclosure of any connector. The connector shown in the sketch was completely different from anything shown or described in the Salati patent. The other letters and drawings which the plaintiff brought forward were all dated late in 1944 and were not addressed to or written by Salati, he did not prepare them, and neither his signature, initials or any other indicia indicate that he saw them before the trial. His testimony indicates that he had never seen them before the trial.

26. Other documents introduced at the trial by the defendant from plaintiff's business records included a sketch allegedly made by Salati on April 27, 1944. This sketch was not witnessed for many months thereafter and shows the prototype BNC connector shown in the Bell Laboratory drawings ESL 662,916 and BL 100346 bearing earlier dates. Page 27 of Salati's laboratory notebook bears the uncorroborated date of July 26, 1944 and is the only written document which appears to support the original Salati patent application. At page 27 and in the original application the central connector portion is a capacitive portion providing the entire capacitive compensation. This document bears the names of witnesses only as of January 8, 1945.

27. Plaintiff's employee C. Bradford Sheppard carried on correspondence with the Navy, leading to standardization of one connector and designed a connector very similar to that shown on Navy drawing RE 49 F 246. Sheppard, on July 19, 1944, a week prior to Salati's only sketch of the configuration which was incorporated in the Salati patent application and later abandoned, made design calculations including the determination of discontinuity capacitances and the dimensioning of the central section to have the characteristic impedance, $Z_0$. This was similar to the accepted design and a totally different design from anything conceived by Salati.

30. Salati was merely a gleaner in the connector art. The connector shown in his original patent application was one of many contemporary designs called forth by the new $\frac{1}{4}$ inch coaxial cable. It satisfied no long-felt want, it solved no unique problem, it was only what many skilled artisans did and could have done at that time. It used no new elements and was not a new combination. It was never used commercially.

31. The connector described in the ultimate Salati patent was wholly different from that described in the application as filed and was not first conceived by Salati.

32. All of the claims of the Salati patent are invalid.

33. Within a period of six years next preceding the filing of the complaint herein and subsequent to the issuance of the Salati patent No. 2,540,012, the defendant has manufactured and sold connectors identified as follows:

No. A-100-056-1 (Military Type No. UG 88/U)

No. A-100-130-1 (Military Type No. UG 89/U)

34. The Court further finds that the connectors so identified are in all material respects the same as the connectors described and claimed in the Salati patent, No. 2,540,012, and operate on the same principles and produce the same results. It follows, therefore, that had the Court found the Salati patent to be valid, the defendant's accused devices as identified in Finding No. 33 would infringe plaintiff's patent, particularly in view of the breadth and scope of the claims in the Salati patent.

## Conclusions of Law

From the foregoing facts the Court concludes:

1. The Court has jurisdiction of the parties and of the causes of action alleged in the complaint and counterclaim.

■ 2. The BN, HN and Bell Prototype BNC connectors illustrated in stipulated government and Bell Telephone Laboratory drawings constitute prior knowledge, within the meaning of Title 35 U.S.C. § 102(a), as to the connector disclosed in the patent in suit and may properly be considered in determining whether that device constitutes patentable invention. It is immaterial whether or not those devices were placed in commercial use prior to May 19, 1945 or at any other time. Corona Cord Tire Company v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610.

■ 3. Fell patent 2,406,945, Cork patent 2,490,622, Weber et al. patent 2,529,436 and Waite patent 2,615,953 are all applicable prior art patents under Title 35 U.S.C. § 102(e) in that each of the applications which resulted in the respective patents was filed in the United States before the date of the Salati invention. Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651.

■ 4. Each and every claim of the Salati patent in suit is invalid because it defines no more than a combination of old and well-known connector elements wherein each element serves no new, additional or different function in the combination than it served separately and thus each and every claim fails to meet the exacting standard of patentable invention required by Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. See also Hamilton Mfg. Co. v. Illinois Surgical Co., 7 Cir., 193 F.2d 938, 942; Powder Power Tool Corp. v. Powder Actuated Tool Co., Inc., 7 Cir., 230 F.2d 409; Pleatmaster, Inc., v. J. L. Golding Mfg. Co., 7 Cir., 1957, 240 F.2d 894.

5. In each of the instances of prior knowledge, the BN, the HN and the Bell prototype BNC, and in at least the patent to Waite Jr., 2,615,953, all of the structural elements and functional characteristics of the claims of the Salati patent in suit are combined in the same or an equivalent way to produce the same result. Any minor changes in the precise structural details are not a part of the claimed invention and are clearly matters of design which are obvious and a matter of mechanical skill. The art possessed all of the necessary theoretical knowledge to duplicate the Salati teaching. National Pressure Cooker Co. v. Aluminum Goods Mfg. Co., 7 Cir., 162 F.2d 26, 29.

6. Plaintiff has failed to establish any date of conception, reduction to practice, or invention prior to the filing date of the Salati patent. Pleatmaster, Inc., v. J. L. Golding Mfg. Co., 7 Cir., 240 F.2d 894, 898.

7. Had the Court found the Salati patent to be valid, the defendant's accused devices identified as No. A-100-056-1 (Military Type No. UG 88/U) and No. A-100-130-1 (Military Type No. UG 89/U) would infringe the claims of the Salati patent, particularly in view of the breadth and scope of the claims in said patent.

8. Defendant is entitled to a judgment dismissing the complaint, finding the patent invalid, and to an award of costs.